**UNITED STATES of America, Appellee,**

v.

**Luis E. PARRILLA–TIRADO, Defendant, Appellant.**

**No. 93–1228.**

United States Court of Appeals, First Circuit.

Heard March 9, 1994.

Decided April 28, 1994.

---

Lydia Lizarribar–Masini, Hato Rey, PR, for appellant.

Ernesto Hernandez–Milan, Asst. U.S. Atty., with whom Guillermo Gil, U.S. Atty., and Jose A. Quiles–Espinosa, Sr. Litigation Counsel, Hato Rey, PR, were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

SELYA, Circuit Judge.

Having rethought his guilty plea, defendant-appellant Luis E. Parrilla–Tirado (Parrilla) moved to withdraw it pursuant to Fed. R.Crim.P. 32(d). The district court denied the motion and thereafter imposed sentence. Parrilla appeals. We affirm.

## I. PROCEEDINGS BELOW

On April 24, 1991, appellant and a companion, Angel M. Concepcion–Roberto (Concepcion), were apprehended after a high-speed chase. The authorities discovered a firearm on the front passenger seat of their car.[1] On September 18, 1991, a grand jury returned a two-count indictment. Count 1 charged appellant with violating 18 U.S.C. § 922(g)(1) (1988), a statute that renders it unlawful for a convicted felon, among other things, to "transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm," and also charged Concepcion with assisting the crime's commission in violation of the aiding and abetting statute, 18 U.S.C. § 2(a) (1988). Count 2 reversed the defendants' roles, charging that Concepcion knowingly transported and/or possessed the firearm in violation of section 922(g)(1), and that appellant aided and abetted him.

Appellant was arraigned before a magistrate judge in February of 1992. Notwithstanding the structure of the indictment, the Assistant United States Attorney (AUSA) inexplicably told the magistrate that appellant was being prosecuted exclusively on count 1. Consequently, the magistrate arraigned appellant only on that count. He pled not guilty.

Four months later, appellant, through counsel, negotiated a non-binding plea agreement with the government, see Fed. R.Crim.P. 11(e)(1)(A), under which he agreed to admit his guilt on count 1 and the government agreed to seek dismissal of the charge leveled against him in count 2. In due course, the district court allowed appellant's change of plea. In September 1992, the probation office compiled and delivered the presentence investigation report (PSI Report). In December, after having been afforded an opportunity to scrutinize the PSI Report, appellant moved to withdraw his plea. The district court denied the motion, primarily on the ground that appellant's asserted reasons lacked "force and plausibility." Soon thereafter, the court sentenced appellant on count 1 and dismissed count 2.

Appellant now asserts that no consideration existed within the plea bargain to support the guilty plea, and, therefore, that he should have been allowed to withdraw it. This assertion rests on two theses: (1) that the AUSA indicated at arraignment that count 2 did not involve appellant; and (2) that the two counts were, in all events, multiplicitous, and, consequently, pleading guilty to one count effectively disposed of the other.

## II. ANALYSIS

We first set in place the framework under which motions to withdraw pleas must be analyzed, and then turn to the specifics of appellant's asseverational array.

---

1. The record reflects that Concepcion had been driving the vehicle and that appellant had occu-

pied the front passenger seat.

## A. The Framework.

■ Trial judges are the judiciary's infantry: they man the front lines and, therefore, possess special insight into the dynamics of the cases over which they preside. In deference to that insight, we review the district court's decision to grant or deny a request to withdraw a guilty plea solely for abuse of discretion. *See United States v. Doyle*, 981 F.2d 591, 594 (1st Cir.1992); *United States v. Pellerito*, 878 F.2d 1535, 1538 (1st Cir.1989).

■ Although a motion to withdraw a guilty plea before sentencing is determined under a less stringent standard than a motion made after sentencing, *see* Fed. R.Crim.P. 32(d) advisory committee's note, a defendant does not have an automatic right to withdraw his plea even at that comparatively early stage. *See United States v. Buckley*, 847 F.2d 991, 998 (1st Cir.1988), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983). Rather, such a motion can be granted before sentencing only upon an affirmative showing of a "fair and just reason." Fed.R.Crim.P. 32(d). The devoir of persuasion as to the existence of such a reason rests with the defendant. *See United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992); *see also* Fed.R.Crim.P. 32(d) advisory committee's note.

■ To gauge whether the asserted ground for withdrawal meets the Rule 32(d) standard, a court must look at the overall situation, most prominently (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed.R.Crim.P. 11,[2] or otherwise legally suspect. *See Doyle*, 981 F.2d at 594; *Pellerito*, 878 F.2d at 1537. And there is a final barri-er that must be surmounted: even if a defendant appears at first blush to meet the strictures of this four-part test, the *nisi prius* court still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if · the defendant is permitted to alter his stance. *See Doyle*, 981 F.2d at 594; *Pellerito*, 878 F.2d at 1537.

## B. Applying the Framework.

We run the gauntlet of relevant factors, discussing them in sequence.

■ **1. Plausibility of the Asserted Reasons.** A defendant bent on withdrawing a guilty plea ordinarily must demonstrate a plausible reason for doing so. *See United States v. Tilley*, 964 F.2d 66, 72 (1st Cir. 1992). In this context, plausibility must rest on more than the defendant's second thoughts about some fact or point of law, *see United States v. Nichols*, 986 F.2d 1199, 1203 (8th Cir.1993), or about the wisdom of his earlier decision, *see United States v. Austin*, 948 F.2d 783, 787 (1st Cir.1991). We do not think that either of appellant's proffered reasons can vault this hurdle.

■ **a.** Refined to bare essence, appellant's flagship claim is that, because the government did not intend to prosecute him under count 2, he received nothing of value in exchange for his plea to count 1. This argument prescinds from a presentable premise: after all, we frequently have said that plea agreements are contractual in nature. *See, e.g., United States v. Atwood*, 963 F.2d 476, 479 (1st Cir.1992); *United States v. Hogan*, 862 F.2d 386, 389 (1st Cir.1988). But this analogy can only be carried so far. Any time a defendant pleads guilty, he receives some built-in benefits, *cf., e.g., Corbitt v. New Jersey*, 439 U.S. 212, 224 n. 14, 99 S.Ct. 492, 500 n. 14, 58 L.Ed.2d 466 (1978) (discussing leniency usually accorded to defendants who plead guilty as opposed to those who stand trial); U.S.S.G. § 3E1.1 (making available

---

**2.** Three facets of Rule 11 are especially important in this respect. Rule 11(c) prescribes, in exquisite detail, the advice that a court must give to a defendant who indicates a desire to enter a guilty plea. Rule 11(d) prescribes a procedure for ensuring that any plea is voluntary in nature. Rule 11(e) outlines a series of safeguards referable to plea agreements between accuser and accused.

reduction in offense level for acceptance of responsibility), and so long as the government does not make a material misrepresentation, renege on a promise, or breach the plea agreement, *see, e.g., Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), we do not believe that any further consideration is essential to support a guilty plea.

■ In any event, appellant received the full benefit of his bargain in this case. The indictment made manifest, and the plea agreement confirmed, the grand jury's decision to charge appellant with *two* crimes, not one. Although appellant had not been arraigned on count 2, that was a matter of mere mechanics. He could have been arraigned, and, ultimately, prosecuted, at virtually any time.[3] Thus, count 2 remained a viable option and the dismissal of it benefitted appellant. Accordingly, appellant's first asserted reason for seeking to withdraw his plea lacks force.

**b.** As an alternative reason, appellant asserts that the dismissal of count 2 did not amount to valuable consideration because the two counts of the indictment in reality comprised a single charge. This assertion mischaracterizes the components of the indictment and the relationship of the counts *inter sese.*

■ We do not dispute the basic proposition on which this assertion is founded. Indeed, it is apodictic that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. To this end, the Double Jeopardy Clause shields a defendant from a second prosecution for the same offense after either an acquittal or a conviction, and also shields a defendant from multiple punishments for the same offense. *See Jones v. Thomas*, 491 U.S. 376, 380–81, 109 S.Ct. 2522, 2525–26, 105 L.Ed.2d 322 (1989); *United States v. Rivera–Martinez*, 931 F.2d 148,

152 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). Thus, an indictment may be regarded as repugnant to the Double Jeopardy Clause if it charges a single offense in more than a single count. *See United States v. Lilly*, 983 F.2d 300, 302 (1st Cir.1992).

■ The Supreme Court has spoken to this topic in unambiguous terms:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If, applying the *Blockburger* test, the crimes charged are discrete offenses, the defendant may be prosecuted for both offenses even though they arise out of the same conduct, but if the crimes charged have the same elements, or if one is a lesser included offense of the other, double jeopardy at some point will bar the door. *See United States v. Dixon*, —— U.S. ——, ——, ——, 113 S.Ct. 2849, 2857, 2860, 125 L.Ed.2d 556 (1993); *United States v. Colon–Osorio*, 10 F.3d 41, 45–46 (1st Cir.1993).

Under *Blockburger*, appellant's claim fails. Count 1 of the indictment requires a showing that appellant, after having been convicted of a felony, transported or possessed the firearm discovered by the police. *See* 18 U.S.C. § 922(g)(1). Count 2 requires a showing that Concepcion, rather than appellant, had been convicted of a prior felony, that Concepcion, rather than appellant, knowingly transported or possessed the firearm, and that appellant, rather than Concepcion, aided and abetted. On the allegations contained in that count, appellant could not have been convicted under section 922(g)(1), but only under the

---

**3.** To be sure, an overlong period of delay between indictment and arraignment might vitiate the prospects for future prosecution. *See* U.S. Const. amend. VI; *see also United States v. Mala*, 7 F.3d 1058, 1061 (1st Cir.1993). But the delay here, as of the time appellant negotiated the plea agreement, was not overly protracted. And in any event, even an extraordinary period of delay

in arraigning a defendant does not automatically annul an indictment, but merely serves, if and when raised, to trigger an analysis of relevant factors that eventually may lead to a dismissal of the charge. *See, e.g., Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Mala*, 7 F.3d at 1062 n. 3.

separate aiding and abetting statute, 18 U.S.C. § 2(a). Plainly, then, the elements of the two offenses are distinct rather than identical. Hence, there is no multiplicitousness. *See Colon–Osorio,* 10 F.3d at 45.

**2. *Timing.*** The timing of a motion to withdraw a guilty plea is significant. Delayed requests, even if made before sentencing, are generally regarded with disfavor. *See Pellerito,* 878 F.2d at 1541. The rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration. *See Doyle,* 981 F.2d at 595.

In this case, appellant waited roughly six months before he moved to withdraw his plea. And, moreover, his belated change of heart followed not long after the PSI Report—a document which contained, *inter alia,* information suggesting that a stiff sentence loomed—arrived at the court's doorstep.[4] In appellant's case, then, a simple chronology of events serves to cast a long shadow over the legitimacy of his professed reasons for seeking to change course. Courts need not accept a defendant's explanations uncritically. *See generally United States v. O'Brien,* 14 F.3d 703, 708 (1st Cir. 1994) (reminding us that "[t]here are limits to coincidence").

**3. *Claim of Innocence.*** In determining whether a proposed plea withdrawal is fair and just, a defendant's assertion of innocence may weight the scales in favor of withdrawal, and conversely, the absence of a claim of innocence weights the opposite pan of the scales. *See Doyle,* 981 F.2d at 596; *Kobrosky,* 711 F.2d at 455. Appellant derives no comfort from this tenet. In his motion papers, he did not profess his innocence. Thus, this factor cuts sharply against allowing appellant's motion to withdraw his guilty plea.

**4. *Other Considerations.*** Other considerations can, of course, influence whether a defendant should be allowed to withdraw a guilty plea. Here, however, we discern no miscellaneous considerations that counsel in favor of permitting appellant to withdraw his plea. To the contrary, the record discloses that appellant entered the plea voluntarily, with full knowledge of the terms of the plea agreement, *see Austin,* 948 F.2d at 787, and under circumstances wherein the plea evidenced an intentional relinquishment of a known right.

Furthermore, despite the AUSA's misstatement at arraignment, the key facts were at appellant's disposal from the very outset. The indictment itself was crystal clear. The plea agreement was pellucid in its description of the two counts. Then, too, the court explained matters fully during the change-of-plea hearing and appellant assured the court that he understood both the agreement (which he had signed) and the consequences of the ensuing plea. He also assured the court that he entered into the plea and the plea agreement of his own free will.

We will not paint the lily. It is the policy of the law to hold litigants to their assurances. As we wrote in an analogous case, "[w]e will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *Pellerito,* 878 F.2d at 1539. So it is here.

### III. CONCLUSION

We need go no further.[5] Given reasons for withdrawal that are lacking in plausibility, an extended time lapse between the original plea and the motion to withdraw, the absence of any assertion of innocence, the district court's scrupulous adherence to the dictates of Rule 11, and the totality of the attendant circumstances, we discern no hint of discretion abused in the court's refusal to permit appellant to withdraw his guilty plea. To be

---

4. The PSI Report not only suggested a guideline sentencing range of 188–235 months, but also indicated that grounds for an upward departure might exist. Appellant filed his motion to withdraw shortly after having had an opportunity to examine the report.

5. Because appellant has utterly failed to present a fair and just reason for plea withdrawal, we need not discuss possible prejudice to the government. *See Doyle,* 981 F.2d at 596 n. 6; *Buckley,* 847 F.2d at 998 n. 5.

blunt, appellant had no entitlement to a second bite of the fig—and we will not afford him one.

*Affirmed.*