45 F.3d 424
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES, Appellee,
v.
James T. MARSHALL, Defendant, Appellant.
 No. 94-1724
 United States Court of Appeals,
First Circuit.
 Jan. 5, 1995
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Mark L. Wolf, U.S. District Judge ]
 James T. Marshall on brief pro se.
 Donald K. Stern, United States Attorney, and Mark W. Pearlstein, Assistant United States Attorney, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant James Marshall appeals from a district court order denying his motion under Fed. R. Crim. P. 32(d) to withdraw his guilty plea. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant was indicted on a single count of being a felon in possession of a firearm-a charge that, due to his lengthy criminal history, subjected him upon conviction to a 15-year mandatory minimum term of imprisonment. See 18 U.S.C. Secs. 922(g), 924(e). Defendant was ordered detained pending trial. Nine months later (following the discovery that defendant was afflicted with the HIV virus), the government and defendant reached a plea agreement providing in part as follows: (1) defendant would plead guilty and would assist the government in related criminal investigations; (2) the government would recommend that he be released pending sentencing; and (3) in the event that defendant's cooperation (in the government's judgment) constituted substantial assistance, the government would file a motion under U.S.S.G. Sec. 5K1.1 for downward departure and would recommend no further imprisonment. On June 24, 1993, following a careful Rule 11 colloquy, the district court accepted defendant's guilty plea and adopted the plea agreement. Defendant was released on bail six days later.
 
 
 3
 Defendant failed to assist the government as promised-despite being afforded numerous opportunities to do so, and despite being specifically warned on several occasions that he would lose the benefits of a Sec. 5K1.1 motion if his lack of cooperation persisted. Accordingly, on March 28, 1994, three days before sentencing was to occur, the government announced that it would decline to move for a downward departure. The court ended up postponing sentencing for several weeks to enable defendant to review the presentence report, but it did revoke bail on March 31 because of the mandatory sentence he was then facing.
 
 
 4
 Six days later, defendant filed a pro se motion to withdraw his plea, arguing that his counsel had provided ineffective assistance in advising him to plead guilty. His sole contention in this regard was that counsel, by failing to review his file, had overlooked and otherwise failed to pursue a viable justification defense. The court addressed this motion on April 21 at the outset of the sentencing hearing. In response to inquiries from the court, defendant acknowledged that he and counsel had discussed a possible justification defense prior to the change of plea, with the latter advising him that it was unlikely to succeed. Counsel confirmed this version of events, telling the court that a justification defense had struck him as "thin" based on "the documents provided"; he added, however, that the final choice to plead guilty had been made by his client. The court found that defendant had adduced no "fair and just reason" to withdraw his plea, as required by Rule 32(d). It noted that, far from having been ineffective, counsel had acted responsibly by abandoning the "challenging" justification defense and negotiating a "highly favorable" plea agreement. The court denied the motion to withdraw and thereafter imposed the 15-year mandatory sentence. Defendant now appeals on a pro se basis.
 
 II.
 
 5
 Defendant's challenge to the court's Rule 32(d) decision requires little comment. We review such a ruling for abuse of discretion. See, e.g., United States v. Gonzalez-Vazquez, 34 F.3d 19, 22 (1st Cir. 1994). As explained in United States v. Parrilla-Tirado, 22 F.3d 368 (1st Cir. 1994), the exercise of discretion in this context depends on the "overall situation" and rests "most prominently" on four factors: (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether the plea may appropriately be regarded as involuntary, in derogation of the requirements of Rule 11, or otherwise legally suspect.[1] Id. at 371; accord, e.g., United States v. De Alba Pagan, 33 F.3d 125, 127 (1st Cir. 1994).
 
 
 6
 In reverse order, we note that defendant has advanced no challenge to the adequacy of the Rule 11 hearing. See, e.g., United States v. Austin, 948 F.2d 783, 787 (1st Cir. 1991) ("we have repeatedly found no abuse of discretion in denial of [Rule] 32(d) motions where Rule 11 procedures were assiduously followed"). Defendant's justification defense is consistent with an assertion of innocence but, as noted infra, is of dubious merit. The timing of the motion alone would constitute a sufficient basis for denial under the circumstances: the fact that it was filed over nine months after the guilty plea, and only after the pronouncement that defendant was again facing a mandatory 15-year sentence, "cast[s] a long shadow over the legitimacy of his professed reasons for seeking to change course."[2] Parrilla-Tirado, 22 F.3d at 373; accord, e.g., United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (fact that defendant filed 32(d) motion "only after he learned that the Government would not move for a downward departure" undercuts its plausibility).
 
 
 7
 Finally, the justification defense now touted by defendant was properly described as "thin" by defense counsel.[3] Even if it had been of somewhat greater heft, counsel's advice to abandon such a tactic in favor of a plea agreement affording defendant the opportunity to avoid a 15- year prison term can hardly be thought unreasonable. And during the Rule 11 colloquy defendant had pronounced himself satisfied with counsel's performance. Given these factors, the district court cannot be said to have abused its discretion in finding no "fair and just reason" for a withdrawal of defendant's plea.
 
 III.
 
 8
 Nor do we find merit in defendant's collateral claim that he was denied his Sixth Amendment right to counsel during the course of the Rule 32(d) hearing. This is not a case like United States v. Ellison, 798 F.2d 1102, 1106-09 (7th Cir. 1986), cert. denied, 479 U.S. 1038 (1987), in which a defendant's allegation of specific misconduct on the part of his attorney, and the latter's denial thereof, created a palpable conflict. As mentioned, in response to the court's questioning here, defendant and counsel agreed on the pertinent factual issues. Where it can be determined (from the face thereof or through preliminary inquiry) that a Rule 32(d) motion claiming ineffective assistance of counsel lacks colorable merit, a court is under no obligation to conduct a full-blown evidentiary hearing, see, e.g., United States v. Ramos, 810 F.2d 308, 314 (1st Cir. 1987), or to secure substitute counsel, see, e.g., United States v. Trussel, 961 F.2d 685, 688-90 (7th Cir. 1992); United States v. Rhodes, 913 F.2d 839, 841-46 (10th Cir. 1990), cert. denied, 498 U.S. 1122 (1991); see also De Alba Pagan, 33 F.3d at 126-28.
 
 
 9
 Affirmed.
 
 
 
 [1]
 If the balance of these factors weighs in the defendant's favor, the court must also consider "any demonstrable prejudice that will accrue to the government." Parrilla- Tirado, 22 F.3d at 371
 
 
 [2]
 Defendant has, at no time, questioned the propriety of the government's refusal to file a Sec. 5K1.1 motion
 
 
 [3]
 Defendant claims that he was victim rather than culprit-i.e., that he encountered two armed, unidentified men at the door to his apartment; that a struggle ensued, during which he managed to gain possession of one of their guns; and that he then knocked on the doors of several adjacent apartments screaming for help. In support, he points to the transcripts of various "911" calls made by his neighbors over an eight- minute span. Several of these callers reported spotting (through their peepholes) a man in the hallway brandishing a gun, and hearing him "yelling for help" and "saying someone's trying to kill him."
 None of these callers, however, mentioned seeing the two alleged intruders. More important, other evidence suggested that defendant failed to get rid of the firearm as soon as a safe opportunity arose-an essential element of a justification defense. See, e.g., United States v. Smith, 982 F.2d 681, 685 (1st Cir. 1993). When two police officers arrived at the scene (in plainclothes, with police badges around their necks) and drew their guns, defendant pointed the handgun at them from ten feet away. The officers identified themselves and demanded that he drop the gun, and he did so. But as they approached him, defendant "lunged" for the gun (as he acknowledged at the Rule 11 hearing), thereby causing a lengthy struggle.
 There was also considerable hearsay evidence, we note, suggesting that defendant was under the influence of drugs at the time of the incident.