UNITED STATES of America

v.

Pedro MURIEL.

CR No. 95–078–T.

United States District Court,
D. Rhode Island.

March 19, 1996.

his plea of guilty to Count III of the indictment against him. For the reasons stated below, the motion is denied.

### Background

On September 26, 1995, Muriel was indicted on several drug trafficking and firearms charges. The indictment contained three counts. Count I charged possession of heroin with intent to distribute; Count II charged using and carrying a firearm during and in relation to a drug trafficking crime and Count III charged possession of a firearm after having been convicted of a felony.

At the time he was arrested, Muriel was on probation in connection with a previous state court conviction. Consequently, the Rhode Island Attorney General has initiated proceedings to have Muriel adjudged in violation of the terms of his probation.

The events leading up to the indictment are undisputed.[1] On September 14, 1995, Providence Police obtained a warrant to search a two-bedroom apartment located at 52 Heath Street. Upon entering, they found Muriel, clad only in undershorts, standing in one of the bedrooms. Muriel immediately reached toward the bed where a loaded handgun was concealed under the pillow. Muriel claims that he was reaching for his trousers. Upon searching that room, police found $1,065.00 dollars in cash in the drawer of a night table. They also found Muriel's driver's license and various personal papers bearing his name. In searching what appeared to be a children's bedroom, detectives discovered a plastic bag which held twenty-three glassine packets bearing the stamp RED BOMB and containing traces of heroin and an electronic scale like those commonly used by drug traffickers.

Muriel's counsel recognized that it would be difficult to successfully defend in the probation violation proceeding because the prosecution's burden of proof is much lower than that in a criminal trial. Accordingly, he sought to negotiate a disposition of the federal charges that would minimize any additional time Muriel might be required to serve.

Zechariah Chafee, Asst. U.S. Attorney, U.S. Attorney's Office, Providence, RI, for Plaintiff.

Scott A. Lutes, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER

TORRES, District Judge.

This case is before the Court for consideration of Pedro Muriel's motion to withdraw

---

1. They are set forth in the presentence report and have not been objected to by Muriel although he disagrees with the inferences that properly may be drawn from them.

One would be hard pressed to quarrel with that strategy, particularly in light of the five-year minimum sentence confronting Muriel if he were convicted under Count II. *See* 18 U.S.C. § 924(c)(1).

Those negotiations resulted in a plea agreement calling for Muriel to plead guilty to Count III. In exchange, the government agreed to seek dismissal of other the two counts and to recommend a sentence at the low end of the applicable guideline range.

Sentencing was scheduled for February 23, 1996. At that time, Muriel moved to withdraw his plea so that he could file a motion to suppress the fruits of the September 14 search.

### Discussion

■ The applicable standard for determining whether a defendant should be permitted to withdraw a guilty plea is less stringent when the request is made before sentencing than it is when the request is made after sentencing. *U.S. v. Gray,* 63 F.3d 57, 59–60 (1st Cir.1995); *U.S. v. Pellerito,* 878 F.2d 1535, 1537 (1st Cir.1989). However, even before sentencing, a defendant does not have an automatic right to withdraw his plea. *Gray,* 63 F.3d at 59; *U.S. v. Ribas–Dominicci,* 50 F.3d 76, 78 (1st Cir.1995); *U.S. v. Buckley,* 847 F.2d 991, 998 (1st Cir.1988). Rather, the defendant must establish the existence of a "fair and just reason." Fed.R.Crim.P. 32(e); *U.S. v. Parrilla–Tirado,* 22 F.3d 368, 371 (1st Cir.1994). Among the factors to be considered in determining whether a defendant has sustained that burden are:

1. the plausibility of the reasons prompting the requested change of plea;

2. the timing of the defendant's motion;

3. the existence or nonexistence of an assertion of innocence; and

4. whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the require-

ments imposed by Fed.R.Crim.P. 11, or otherwise legally suspect.

*Id.; Gray,* 63 F.3d at 60.

■ In this case, all of those factors militate against allowing withdrawal. Muriel's request fails the plausibility test because "plausibility must rest on more than the defendant's second thoughts about some fact or point of law or about the wisdom of his earlier decision." *Parrilla–Tirado,* 22 F.3d at 371 (internal citation omitted). It is obvious that Muriel's change of heart is the product of second thoughts about his decision to enter into a plea agreement instead of filing a motion to suppress. It is equally *obvious that those second thoughts were* prompted by the United States Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which makes it more difficult for the government to prove that a defendant "used" a firearm as that term is defined for purposes of 18 U.S.C. § 924(c)(1). Thus, with the likelihood of a mandatory 5 year consecutive sentence apparently diminished, Muriel wants to change his strategy.

While such second thoughts are understandable, they do not provide a sufficient reason for permitting Muriel to withdraw his plea. This is not a case in which Muriel was deprived of the opportunity to seek suppression of the evidence against him by being misled about the actual facts. Clearly, he knew that the evidence against him was seized during the search of the apartment at 52 Heath Street and he could have challenged the admissibility of that evidence. Instead, he made a tactical decision to enter into a plea agreement that eliminated the threat of a mandatory five-year sentence and required the government to recommend a sentence at the low end of the applicable guideline range.

It also should be noted that Muriel has presented nothing even remotely suggesting that his proposed motion to suppress would succeed. As previously stated, the search was conducted pursuant to a warrant. Therefore, Muriel would have the burden of establishing that there was no probable cause for issuance of the warrant by showing either that the "totality of the circumstances test"

established by *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) *reh'g denied* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983) was not satisfied; or by showing that there were intentional or reckless misstatements and/or omissions in the affidavit presented to the Magistrate. *Franks v. Delaware,* 438 U.S. 154, 171–172, 98 S.Ct. 2674, 2684–2685, 57 L.Ed.2d 667 (1978).

In his memorandum, Muriel makes several vague and general statements about alleged deficiencies in the affidavit that led to issuance of the warrant. Most of which appear to be inconsequential.[2] In any event, Muriel has failed to submit a copy of the affidavit or any evidence indicating that it misstates or omits material facts. Nor does Muriel explain how the alleged deficiencies render the affidavit insufficient to establish probable cause. The only concrete assertion he makes is that the affidavit erroneously states that there was an arrest warrant outstanding for him at the time the search warrant was issued.

Muriel also appears to suggest that there has been a failure of consideration for the plea agreement because dismissal of Count II gives him no more than he is entitled to under *Bailey.* There are two flaws in that argument. First, even in light of *Bailey,* it is far from certain that Muriel would be acquitted of the charge in Count II. Evidence that Muriel had a firearm within reaching distance and made a movement toward it when police entered could be sufficient to establish that he actively "used" the firearm.

■ More importantly, even if the government's promise to dismiss Count II is disregarded, there is ample consideration supporting the plea agreement. The government also promised to seek dismissal of Count I and to recommend a sentence at the low end of the applicable guidelines range. In similar circumstances, the latter promise, alone, has been held sufficient consideration for a guilty plea. *Parrilla–Tirado,* 22 F.3d at 371–72.

Muriel's request also fails the "assertion of innocence" test because he does not even claim to be innocent of the charge to which he pled. On the contrary, in the acceptance of responsibility statement contained in the Presentence Report Muriel admits his guilt. Furthermore, Muriel acknowledges that if his motion to suppress is denied, he will plead guilty, again, but will seek to enter a conditional plea pursuant to Fed.R.Crim.P. 11(a)(2) in order to preserve the issue for appeal.

The other factors identified in *Parrilla–Tirado* also weigh against allowing Muriel to withdraw his plea. Muriel did not make his motion until the day set for sentencing which was nearly three months after he entered into the plea agreement. Moreover, it appears more than coincidental that his change of heart did not come until after the presentence report was issued and Muriel had an opportunity to see the magnitude of the potential sentence as calculated by the probation officer.

Finally, Muriel makes no claim that his plea was anything other than knowing and voluntary. Indeed, it is difficult to see how such a claim could be made. At the change of plea hearing, Muriel was apprised of the precise nature of the charge set forth in Count III, the elements the government was required to prove in order to convict him, the sentence that could be imposed if his guilty plea was accepted and the rights he was relinquishing by pleading guilty. Furthermore, he assured the Court that he understood all of those things, that the plea agreement accurately set forth all of the terms of his bargain with the government and that he entered into it voluntarily.

### *Conclusion*

For all of the foregoing reasons, defendant's motion to vacate his guilty plea is denied and the clerk is directed to reschedule this case for sentencing.

IT IS SO ORDERED.

---

2. Muriel alleges that "police relied upon the word of a confidential informant ... [that they] never made a controlled buy from the subject premises [and that] they did not note any unusual numbers of people coming and going from the subject apartment ..."