UNITED STATES of America, Plaintiff

v.

Manuel Fernandez TORRES, Defendant.

CR No. 07–00249 (DRD).

United States District Court, D. Puerto Rico.

Aug. 24, 2010.

Luis R. Rivera–Rodriguez, Luis Rafael Rivera Law Office, San Juan, PR, for Defendant.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. BACKGROUND

Pending before the Court is *Defendant's Request for Withdrawal of Guilty Plea* (Docket No. 632), filed on April 30, 2010 and his *Memorandum of Law in Support of Defendant's Request for Withdrawal of Guilty Plea* (Docket No. 663), filed on July 7, 2010. The Court held two hearings regarding this matter. The first was held on May 27, 2010 (Docket No. 657) and the second was held on June 3, 2010 (Docket No. 658). At these hearings, Defendant, Defendant's former counsel from the time when the guilty plea was entered and two Co–Defendants testified.

Defendant argues that the Court should grant his request to withdraw the guilty plea which he entered (Docket Nos. 510 & 511) after the prosecution presented the initial portion of the direct examination of witness Angel Fernandez Ramos [1] (Docket No. 659). Although Defendant concedes that there is no absolute right to retract a guilty plea, he asks that the Court exercise its discretion to retract his plea in the instant case for lack of voluntariness. Defendant's argument as to voluntariness is based upon his allegation that the counsel who then represented him at the time of entry of the guilty plea promised him that he would be able to later withdraw his guilty plea, subsequently enabling Defendant to see his case before a jury unhindered and unencumbered by the presence

---

1. Angel Fernandez Ramos was a Co–Defendant in this case, and is the son of Defendant Angel Luis Fernandez Torres. At the time when he testified, Angel Fernandez Ramos was also a former policeman who had been assigned to the DEA task force. He took the stand against his Co–Defendants and identified them as the persons who planned and participated in robberies alongside him. Angel Fernandez Ramos specifically identified Defendant as his uncle and stated that Defendant was the person who approached him to join in the series of robberies charged in the instant case. Further, he identified Defendant as a person who both planned and participated in the charged robberies. *See* Docket No. 659, p. 56–81.

of his Co–Defendants.[2] Defendant further alleges that his familial relationship with the other Co–Defendants who pled at the same time rendered his plea involuntary. Defendant also submits to the Court that other factors, such as the timing of his request for withdrawal and claims of actual innocence weigh in favor of the Court granting his request for withdrawal.

The government filed its response on July 21, 2010 (Docket No. 668). Therein, the government first attacks the sufficiency of Defendant's showing that his attorney promised him at the time when the guilty plea was entered that he could subsequently withdraw the plea and proceed alone to trial. The government emphasizes that Defendant's testimony is in direct contradiction with that of his attorney and that, unlike Defendant, his attorney has no personal interest in the matter and, thus, no incentive to testify dishonestly to the Court. Further, the government notes that, although Defendant allegedly asserted innocence to a probation officer on May 26, 2009, he failed to notify the Court that he now claims innocence until he filed a *pro se* motion on August 19, 2009. Additionally, the government notes that Defendant did not actually assert innocence to the probation officer, but rather merely blamed a Co–Defendant for accusing him of involvement. Finally, the government attacks Defendant's claims relating to the alleged involuntariness of his plea. Specifically, the government argues that the Rule 11 colloquy provided by the Court when the guilty plea was entered sufficiently guaranteed that the plea was voluntary and not based upon familial loyalty and the alleged existence of a "package deal" as to all family members.

## II. WITHDRAWING THE GUILTY PLEA

The entry of a guilty plea is a "grave and solemn act." *United States v. Hyde,* 520 U.S. 670, 677, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997)(internal quotation omitted). Thus, it is a bedrock principle that "[t]here is no absolute right to withdraw a guilty plea prior to sentencing." *United States v. Marrero–Rivera,* 124 F.3d 342, 348 (1st Cir.1997). Rather, the burden rests with the criminal defendant to convince the Court that a "fair and just reason" exists for allowing him to withdraw a previous guilty plea. *Id.* In determining whether the defendant has met his burden, the Court

> must look at the overall situation, most prominently (1) the plausibility of reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed.R.Crim.P. 11, or otherwise legally suspect.

*United States v. Parrilla–Tirado,* 22 F.3d 368, 371 (1st Cir.1994). Further, even where a weighing of these factors indicates that the defendant has met his burden of showing a "fair and just reason" for allowing withdrawal, the Court must still "evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if the defendant is permitted to alter his stance." *Id.* As explained herein, however, Defendant has failed to meet his burden of showing a "fair and just reason" for allowing withdrawal; therefore, the Court need not ad-

---

**2.** Practically speaking, such a result would be the equivalent of granting Defendant sever-

ance so that he might proceed alone to trial.

dress possible prejudice to the government.

## A. VOLUNTARINESS OF PLEA

██ Defendant's primary focus is on the allegedly involuntary nature of his guilty plea. Accordingly, the Court shall begin its inquiry with the fourth prong of its determination. Defendant rests his argument on two allegations: first, that his attorney at the time when the guilty plea was made, Mr. Rivera, told him that he could later withdraw the plea and continue to trial; second, that the familial relationship between Defendant and Co–Defendants who also entered guilty pleas improperly influenced him.

In this Circuit, it is generally recognized that "package deals create a significant risk that one defendant will plead guilty against his will in order for his co-defendants to obtain the offered benefit." *United States v. Ortiz–Torres*, 449 F.3d 61, 68 (1st Cir.2006). Accordingly, the First Circuit has "crafted two safeguards designed to minimize this risk of coercion." *Id.* The first is that the prosecution "should inform the district court that the defendant's guilty plea is part of a package deal." *Id.* Additionally, the district court should be careful to address voluntariness during the Rule 11 colloquy. *Id.*

Here, Defendant does not contest that the Court was informed that Defendant's guilty plea was part of a package deal.[3] Thus, the Court's focus is whether the Court properly addressed the voluntariness of Defendant's plea during the Rule 11 colloquy. Here, the Court individually questioned Defendant as to whether "anyone" had promised or assured him anything in an effort to induce him to enter a guilty plea.[4] Further, the Court also specifically asked Defendant if he had been threatened or coerced by each of the Co–Defendants, including those who also entered concurrent pleas.[5] Defendant does

3. As evidenced by the Court's particular attention during the colloquy to whether any of the then-pleading Co–Defendants had influenced or threatened each other in efforts to induce one another to enter pleas of guilty, the Court was under the impression that the pleas in the instant case were a package deal, although the government subsequently argued that the pleas were, in fact, not part of such a deal. *See* Docket No. 627, p. 52 (where the government tells the Court affirmatively that this was, in fact a package deal), p. 57 (the colloquy) & p. 58 (reference to what the Court believed was a package deal); *cf.* Docket No. 657, p. 23 (the government's assertion that this was not, in fact, a package deal). This impression was supported by the government's representation that the pleas were, in fact, part of a package deal. *See* Docket No. 627 p. 52 (the government tells the Court affirmatively that this was, in fact a package deal) As package deals raise heightened concerns as to the voluntariness of a plea above those usually addressed by the Court when a criminal defendant wishes to withdraw a guilty plea, and as the Court acted under the impression that the guilty plea was rendered as part of a package deal, acting out of an

abundance of caution, the Court has analyzed Defendant's request as if his plea was undoubtedly entered as part of a package deal.

4. Specifically, the Court asked Defendant "[h]as anyone made any other different promise or assurance of any kind in an effort to induce you to enter a plea of guilty in this case?" to which Defendant responded "[n]o, sir." Docket No. 627, p. 57, l. 4–7.

5. The colloquy proceeded as follows:

> THE COURT: Have you been threatened and/or coerced by Mr. Angel L. Fernandez Torres, Mr. Saul Moreno, Mr. Jorge Fernandez Torres and/or by Mr. Carlos Diaz Hernandez—[Co–Defendants who pled together with Defendant Fernandez Torres]
> THE DEFENDANT: No, sir.
> THE COURT:—in order to enter this plea?
> THE DEFENDANT: No, sir.
> THE COURT: Now, have you been threatened and/or coerced by other Co–Defendants in this case, Angel Fernandez Ramos, Luis Fernandez Torres, Miguel

not contend that he answered these questions in the negative. *See* Docket No. 657, p. 26. Thus, Defendant's assertion that he was improperly influenced by the inclusion of family members in the package plea deal bears little, if any, weight as the Court applied the proper Rule 11 safeguards to determine that his entry of a guilty plea was not improperly influenced. *See Ortiz–Torres,* 449 F.3d at 69 (finding that the court need only ask each pleading defendant whether "anyone" or "anybody" threatened or coerced them into entering a guilty plea and stating that the court's inquiry in which it named each co-defendant provided sufficient additional safeguards to find that the defendant's plea was not rendered due to coercion from co-defendants when defendant's plea was part of a package deal). "If a defendant elects to sacrifice himself to protect someone close to him that is his choice" and the Court shall not allow him to reverse this decision later. *United States v. Mescual–Cruz,* 387 F.3d 1, 7–8 (1st Cir.2004).

At the hearing pertaining to his motion, Defendant implicated his attorney as having advised him to accept the package plea agreement and to later withdraw his guilty plea in order to proceed to trial. *See* Docket No. 657, p. 25. However, when his attorney, Mr. Rivera, took the stand, he *directly contradicted* this allegation, stating that the only pressure which Defendant was faced with was the pressure of having seen Angel Fernandez Ramos testify against him at trial. *See* Docket No. 657, p. 48–49. Thus, the assertion that

Defendant was improperly influenced by promises made by his attorney becomes an issue of credibility for the Court to weigh. The Court provides more credibility to counsel as he testified strongly and forcefully, without hesitation or vacillation, that he had no intent other than complying with Defendant's decision to enter a guilty plea. The Court therefore finds Mr. Rivera's testimony more compelling than that of Defendant. Further, the Court finds that Defendant's credibility is damaged by his decision to file his *pro se* motion in which he claimed innocence only one month prior [6] to the date when he was scheduled to be sentenced after one continuation was granted. Thus, as to the credibility issue raised regarding whose contradictory testimony to discount and whose to accept as true, the Court finds that Mr. Rivera's testimony was credible, whereas Defendant's was not. Consequently, the Court accepts as true Mr. Rivera's testimony that he was not the genesis of Defendant's belief that he could enter and later shed a guilty plea in order to proceed unhindered and unimpeded by Co–Defendants to trial in the instant case.

Further, during the Rule 11 colloquy, the Court specifically questioned Defendant as to whether anyone had made any promises or assurances to him in order to convince him to enter into the plea agreement. *See* Docket No. 627, p. 57. Defendant does not contest that he answered this question in the negative. *See* Docket No. 657, p. 26. The Court is "entitled to

---

Fernandez Torres or Jaime Santiago Hernandez to enter this plea?
THE DEFENDANT: No, sir.
Docket No. 627, p. 57, l. 8–18. The Court used similar language as to all Co–Defendants who pled on that date. *Id.* at p. 52–55 & 58–59.

**6.** Defendant filed the motion in which he claimed innocence on August 19, 2009 (Dock-

et No. 539) and was originally scheduled to be sentenced on August 14, 2009 (Docket No. 512), although the Court continued the sentencing hearing until September 25, 2009 (Docket No. 535) on July 16, 2009 at the request of the Office of Probation (Docket No. 530).

rely upon [Defendant's] representations, made under oath" during the Rule 11 colloquy. *See Ortiz–Torres,* 449 F.3d at 69; *see also United States v. Marrero–Rivera,* 124 F.3d 342, 349 (1st Cir.1997)(noting that "it is the policy of the law to hold litigants to their assurances"). Thus, the Court finds that, weighing the contradictory evidence in light of Defendant's assertions during the Rule 11 colloquy, Defendant's guilty plea was not rendered involuntary by promises made by his counsel, Mr. Rivera. Accordingly, Defendant has failed to meet his burden of showing that his plea was involuntary and this factor upon which Defendant places principal emphasis weighs against allowing him to withdraw his guilty plea.

7. Although the government links the timeliness factor to the claim of actual innocence, the timeliness factor truly applies to the filing of the motion to withdraw the plea, rather than the claim of actual innocence. *See e.g. Parrilla–Tirado,* 22 F.3d at 373 (discussing the timing factor as related to the request to withdraw plea). However, even if the Court were to consider the filing of the *pro se* claim of innocence as the appropriate date for determining timeliness here, the Court agrees that this factor would still weigh against allowing Defendant to withdraw his plea. *See United States v. Pagan–Ortega,* 372 F.3d 22, 31 (1st Cir.2004)(finding that where a two-month period passed between entry of the guilty plea and the motion to withdraw, it was untimely).

8. Although the portion of the colloquy in which Defendant admitted guilt does not appear in the transcript of the hearing, the Court has determined that this is a typographical error made by the Court Reporter. The relevant portion of the transcript appears as follows:

> THE COURT: Mr. Angel Fernandez Torres, how do you plead to Count 1 and Count 7, guilty or not guilty?
> DEFENDANT ANGEL FERNANDEZ TORRES: Guilty.
> THE COURT: Do you accept the forfeiture count as explained by the Court and signed by you in the plea agreement?

## B. ASSERTION OF INNOCENCE

Defendant asserted his innocence for the first time to the Court in a *pro se* motion filed approximately four months [7] after the entry of his guilty plea. Generally, an assertion of innocence "may weight the scales in favor of withdrawal." *Parrilla–Tirado,* 22 F.3d at 373. However, this weight may be diminished or removed where the Court provided the proper Rule 11 colloquy to determine that a criminal defendant unconditionally admits his guilt. *See e.g. United States v. Doyle,* 981 F.2d 591, 596 (1st Cir.1992). In the instant case, the Court asked Defendant to admit to the facts as set forth by the prosecution, as well as to admit guilt to the charges brought against him, and Defendant complied.[8] Thus, although Defendant later

> DEFENDANT ANGEL FERNANDEZ TORRES: Yes.
> THE COURT: Therefore it is the finding—no, we'll stop there.
> How do you plead to [Count 1 and] 7?
> DEFENDANT ANGEL FERNANDEZ TORRES (sic): Guilty.
> THE COURT: Do you accept the forfeiture count as explained by the Court and signed by you in the plea agreement?
> DEFENDANT ANGEL FERNANDEZ TORRES (sic): Yes.

Docket No. 627, p. 78, l. 4–17. Thus, the Court reporter mistakenly transcribed the name "Angel Fernandez Torres" twice rather than listing that name for the first round of questions by the Court and "Manuel Fernandez Torres" for the second round of questions by the Court. The Court also sees that the Court Reporter mistakenly failed to include the words "Count 1 and" to the question asked of Manuel Fernandez Torres. This determination is bolstered by Defendant's assertions at the hearing on the instant motion as follow:

> THE COURT: All right. Now, here we go again. You, under oath, stated to the Court that you accept that you engaged in all those robberies which were described by counsel. Do you recall that.
> DEFENDANT: Yes.
> THE COURT: So you told me, under oath, the Court, that you had committed all those crimes.

claimed innocence, he also admitted guilt during the appropriate Rule 11 colloquy. Although Defendant later refused to take responsibility for the crimes in his meeting with the probation officer on May 26, 2009 (Presentence Investigation Report p. 12), the Plea Agreement contained a stipulation of facts [9] as well as a stipulation that he had indeed constituted acceptance of responsibility (Docket No. 510, p. 15).[10] The plea agreement was fully translated and explained by Defendant's counsel (Docket No. 627, p. 45–47).[11] Further, Defendant accepted having participated in acts violat-

DEFENDANT: Yes.

Docket No. 657, p. 26, l. 7–14.

> THE COURT: I asked you. Let me go over it again. Do you recall I asked you how did you plead to the Hobbs Act robberies. Do you recall that.
> THE DEFENDANT: Yes.
> THE COURT: And your answer was?
> THE DEFENDANT: Yes.
> THE COURT: Your answer was guilty or not guilty? Which one was it.
> THE DEFENDANT: Guilty.
> THE COURT: Do you recall that I asked you also how did you plead to the weapons charge? Do you recall that?
> THE DEFENDANT: Yes.
> THE COURT: And how did you answer?
> THE DEFENDANT: Guilty.

Docket No. 657, p. 28–29.

During the hearing regarding the instant motion, Mr. Rivera also confirmed that Defendant admitted guilt during the Rule 11 colloquy.

> THE COURT: Mr. Rivera, I asked your client if he recalled actually having pled guilty and having accepted responsibility.
> THE WITNESS: Yes, sir.
> THE COURT: Do you recall the same?
> THE WITNESS: Yes, sir.
> THE COURT: You are sure?
> THE WITNESS: Yes. He accepted responsibility before you, before me and other defendants here.
> THE COURT: Because it is not in the transcript. It is missing.
> THE WITNESS: He did accept responsibility.

Docket No. 657, p. 56, l. 13–24.

9. The statement of facts contained within the Plea Agreement reads as follows:

> From on or about February 1998 up to and including June 14, 2007, defendant Manuel Fernandez Torres and his codefendants participated in a conspiracy to commit a series of robberies of businesses engaged in interstate commerce to include Banco Popular, a federally insured bank, Loomis Fargo & Co., and Ranger American Armored Carrier. These robberies were conducted by the conspirators in every instance with firearms which were brandished. Defendant was aware firearms would be used to perpetrate these robberies. In total, the conspirators took in excess of three million dollars ($3,000,000.00).
> Defendant admits he and other codefendants participated in the robbery of a Loomis Fargo armored truck on June 14, 2007 and stole more than $250,000.00 but less than $800,000.00. Aided and abetted by each other, defendant did use, carry and possess, deadly weapons, to wit, handguns and an AK–47 assault type rifle, during the commission of that robbery to force the driver and messenger of the armored truck to give them the money inside the vehicle.

Plea Agreement, p. 15.

10. The Plea Agreement, including the stipulation regarding acceptance of responsibility, was translated in full to Defendant prior to the hearing regarding entry of his guilty plea and the accompanying Rule 11 colloquy. *See* Docket No. 657, p. 54, l. 17–20; *see also* Docket No. 627. P. 23–25.

11. Specifically, the interaction between the Court and counsel at the Change of Plea Hearing was as follows:

> THE COURT: Mr. Rivera, you have heard the proffer, and what have you done?
> MR. RIVERA: I have translated word by word the contents of the plea agreement provided by the Government this morning. The Defendant understood all of— he asked intelligent questions and doubts regarding the same, which was—which were fully explained to him, and consulted with the prosecutors in this case, Mr. Vernon Miles.

Docket No. 627, p. 46–47.

ing the Hobbs Act when he was read and accepted the government's version of the facts in open court. Docket No. 627, p. 74–75.[12] Hence, this factor does not weigh in favor of granting Defendant's request to withdraw his guilty plea.

12. The dialogue between the prosecutor (Mr. Miles), the Court and Defendant was as follows:

MR MILES: In reference to Defendants Manuel Fernandez Torres, Saul Moreno Navarro and Jorge Fernandez Torres, had this matter proceeded to trial, the United would have shown that from on or about February of 1998, up to and including June 14, 2007, the Defendant, Manuel Fernandez Torres, and his co-Defendants, Saul Moreno Navarro, Jorge L. Fernandez, Defendant Carlos Diaz and Angel Luis Torres participated and engaged in (sic) to affect commerce to Banco Popular, a federally insured bank, Loomis Fargo and Company, and Ranger American Armored Carrier.

These robberies were conducted by the conspirators in each instance with firearms which were brandished. The Defendant was aware that firearms would be used to perpetrate these robberies. In total the conspirators took in excess of $2 million.

The Defendants, Manuel Fernandez Torres, Saul Moreno Navarro and Jorge Fernandez Torres admit that they participated in the robbery of a Loomis Fargo armored truck on June 14th, 2007, and stole more than 250,000 but less than $800,000, and aided and abetted by each other the Defendants did use, carry and possess deadly weapons, to wit, handguns, an AK–47 assault type rifle, during the commission of the robbery to force the driver and messenger of the armored truck to give them the money inside the vehicle.

The United States would have proven the Defendant's guilt beyond a reasonable doubt as to Counts 1, 7 and 8 of the indictment, are producing photographs of documents, weapons, bulletproof vests, monetary loss reports, and other physical evidence, as well as the testimony of the United States and the Commonwealth of Puerto Rico law enforcement officers.

## C. TIMING OF MOTION TO WITHDRAW

Defendant entered his guilty plea in the instant case on April 7, 2009 and filed his motion to withdraw that guilty plea on April 30, 2010, in excess of one year later.[13]

That is substantially the case as to those three, Your Honor.

THE COURT: All right. Manuel Fernandez Torres, now that you have heard the Government's version of facts through the interpreter, do you agree with the Government's version of facts except that the Court recognizes that there may be an issue as to the amount of loss attributed to you?

Do you accept the facts as stated by the United States?

DEFENDANT MANUEL FERNANDEZ TORRES: Yes.

Docket No. 627, p. 74–75. Later, Defendant also admitted in the hearing regarding his request to withdraw his guilty plea that he testified in a manner that established his guilt.

THE COURT: I asked you. Let me go over it again. Do you recall I asked you how did you plead to the Hobbs Act robberies. Do you recall that.

THE DEFENDANT: Yes.

THE COURT: And your answer was?

THE DEFENDANT: Yes.

THE COURT: Your answer was guilty or not guilty? Which one was it.

THE DEFENDANT: Guilty.

THE COURT: Do you recall that I asked you also how did you plead to the weapons charge? Do you recall that?

THE DEFENDANT: Yes.

THE COURT: And how did you answer?

THE DEFENDANT: Guilty.

Docket No. 657, p. 28–29.

13. Even if the Court were to consider the filing of the *pro se* claim of innocence on August 19, 2009 as the appropriate date for determining the timeliness of Defendant's motion to withdraw guilty plea here, as already stated above, this factor would still weigh against allowing Defendant to withdraw his plea. *See Pagan–Ortega*, 372 F.3d at 31 (1st Cir.2004)(finding that where a two-month period passed between entry of the guilty plea and the motion to withdraw, it was untimely).

Accordingly, the Court finds that this factor also weighs against allowing Defendant to withdraw his guilty plea. *See e.g. Parrilla–Tirado*, 22 F.3d at 373 ("Delayed requests, even if made before sentencing, are generally regarded with disfavor."); *see also United States v. Pagan–Ortega*, 372 F.3d 22, 31 (1st Cir.2004)(finding that where a two-month period passed between entry of the guilty plea and the motion to withdraw, it was untimely).

### D. PLAUSIBILITY OF THE REASON PROFFERED BY DEFENDANT

As discussed above, Defendant's claims of actual innocence and involuntariness of his plea are strongly rebutted by the testimony of Defendant's former counsel, and by Defendant's own statements during the Rule 11 colloquy. Defendant entered a guilty plea after being provided the appropriate Rule 11 colloquy for package deals. Further, Defendant accepted responsibility in the Plea Agreement itself via a stipulation regarding a downward departure for accepting responsibility and accepting fully incriminating facts regarding his participation in various Hobbs Act crimes charged under the indictment. Thus, the Court finds that Defendant's grounds for requesting that the Court allow him to withdraw his guilty plea are not plausible for the same reasons why the Court found that the voluntariness factor weighed against Defendant above. Accordingly, as with the first factor which the Court addressed, this final factor weighs against granting Defendant's request. Thus, none of the factors which the Court should consider when ruling upon a motion to withdraw a guilty plea weigh in favor of granting such a request. Hence, the Court hereby **DENIES** Defendant's motion to withdraw his guilty plea.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to withdraw his guilty plea (Docket No. 632). **SENTENCING** is hereby set for **August 31, 2010 at 9:00 AM.**

**IT IS SO ORDERED.**