UNITED STATES of America, Appellee,

v.

Mark HOGAN and Patricia Hogan,
Defendants, Appellants.

No. 88–1190.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1988.
Decided Dec. 1, 1988.

Barbara A. Brown, Winterport, Me., with whom Marshall A. Stern and Stern & Goldsmith, Bangor, Me., were on brief for appellants.

Nicholas M. Gess, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., and Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., were on brief for appellee.

Before BOWNES and SELYA,
Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

This consolidated appeal presents a narrow—but significant—question as to prosecutorial fairness: when a defendant has pled guilty to certain charges and thereafter unburdened himself pursuant to a cooperation agreement guaranteeing use immunity, can the government employ nuggets of information mined from defendant's debriefing in arguing for a stern sentence on the pled offenses? Given the circumstances of this case, the district court answered in the affirmative. We agree.

I

Defendant-appellant Mark Hogan [1] was charged in forty-seven counts of a fifty-

---

* Of the District of Massachusetts, sitting by designation.

1. The indictment named three defendants in all, including Patricia Hogan (Mark's wife) and Cel-

estino Mendez. Mrs. Hogan is also an appellant. Because her appeal is conceptually indistinguishable from her husband's—she pled guilty to certain counts, entered a similarly-

three count indictment with multiple violations of the federal drug laws. 21 U.S.C. §§ 841(a)(1), 846. The touchstone of the bill was a conspiracy charge; the conspiracy, and the criminal conduct spawning the remaining counts, was alleged to have occurred over some twenty months in 1984–85. After sundry preliminaries, Hogan and the government entered into the agreement (Agreement) annexed hereto as an appendix. Though styled as an "agreement to cooperate," the document was in reality a Rule 11(e)(1)(A) plea contract, that is, an agreement among the prosecutor, the defendant, and defense counsel that, "upon the entering of a plea of guilty ... to a charged offense ... the attorney for the government will ... (A) move for dismissal of other charges; ...." Fed.R.Crim.P. 11(e)(1)(A). The district judge neither participated in the discussions nor made any commitment relative thereto. The Agreement provided, in fairly standard phraseology, that Hogan would plead guilty to five counts of the indictment; that he would cooperate and provide intelligence anent federal crimes within his ken; and that he would receive use immunity (including derivative use immunity) referable to the information supplied. The government did not bind itself to recommend any specific disposition of the pled offenses.

Appellant thereafter entered guilty pleas to the stipulated counts [2] and the district judge ordered a presentence report (PSI). *See* Fed.R.Crim.P. 32(c). The report was kept open until Hogan had been fully vetted. In final form, the PSI embodied information which had gone around the horn: Hogan made certain admissions during debriefing; the government used those admissions in formulating the "prosecution version" of the pled offenses for inclusion in the PSI; and the probation officer delivered the admission-laden PSI to the trial judge. Hogan moved to strike this material from the PSI, contending that the information could not be used against him at sentencing.[3] The district court denied the motion, conducted the sentencing hearing—at which the prosecution again alluded to the challenged admissions—and sentenced Hogan to a series of concurrent seven-year sentences, together with the requisite special parole term. The remaining forty-three counts against appellant were dismissed as per the Agreement.

## II

Although plea agreements are usually hammered out at arm's length between opposing counsel (as was the case here), they have long been treated with special solicitude. The Supreme Court has cautioned that principles of fundamental fairness must accompany their implementation:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor,

worded cooperation agreement with the government, was confronted at sentencing with her own admissions, and moved in a timely fashion to bar use of the intelligence—we treat exclusively with her husband's appeal in the body of the opinion. Despite this accommodation to ease in reference, our resolution of the issue is equally dispositive of Mrs. Hogan's appeal.

**2.** The Agreement was amended at that time to reduce the pled offenses to four by deleting the reference to Count 2. That revision is of no consequence for the purpose at hand.

**3.** We need not dwell on the substance of appellant's admissions. We accept *arguendo* his claim that the remarks had the potential of working to his detriment at sentencing and thereafter in connection with parole eligibility:

"Whereas the offenses charged in the indictment involved between 5–6 kilograms of cocaine, the PSI stated [that]: '... the actual amounts of cocaine involved were between 23–26 kilograms....' [and that information] ... came exclusively as a result of [the] debriefing...." Appellants' Brief at 4–5. Hogan does not mention (and we need not address) that the written statement, which he prepared for the judge's scrutiny at sentencing and which he (or his counsel) gave directly to the probation officer for inclusion in the PSI, included a descriptive narrative which itself left no doubt but that Hogan had handled well over six kilograms of cocaine during the period spanned by the indictment.

so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). Moreover, "*Santobello* and its progeny proscribe not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." *United States v. Voccola,* 600 F.Supp. 1534, 1537 (D.R.I. 1985).

Appellant claims there has been such an end-run here. His asseveration sounds the following refrain: the United States wanted Hogan's complete cooperation; it agreed to give him use immunity in order to induce him to waive his Fifth Amendment rights and tell all; and then, despite the grant of immunity, the government beat him about the ears with his admissions in an effort to subject him to harsher penalties than he might otherwise have received. This sneak attack, appellant says, transgressed the Agreement and requires resentencing before a different judge in a proceeding cleansed of taint.

The words, to be sure, have a certain melodious lilt; but we find the music to which they are set to be curiously out of tune.

### III

■ The government, in its plea bargain, bestowed on Hogan what is often called "letter immunity." Whatever may be the dimensions of use immunity granted by court under 18 U.S.C. § 6002—and we do not suggest that its scope is inherently wider or narrower than the scope of letter immunity—the contours of letter immunity are shaped by the letter of the letter, that is, by the language of the contract conferring the immunity. *See United States v. Crisp,* 817 F.2d 256, 258 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). In a setting such as is presented on this appeal, circumscription of immunity by the four corners of the operative document fits neatly alongside the correlative principle that plea agreements, though part and parcel of criminal jurispru-

dence, are subject to contract-law standards in certain respects. *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir. 1985); *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979). We turn, then, to a consideration of the Agreement so that we may accurately measure what eventuated in appellant's case against the yardstick of what was promised to him.

■ The Agreement, we think, is very clear. Fairly read, it appears to draw a plain distinction between "those [infractions] charged in the indictment" and "other violations" of federal law. Agreement ¶ 4. It states explicitly that appellant "shall not receive use immunity regarding his involvement in the [pending] case...." *Id.* The language employed is expansive, indicating no further limitative intent.

Hogan argues that, notwithstanding these pointed references, he did not expect what was said during his debriefing to be used to his detriment at and after sentencing. Therefore, since plea agreements should be interpreted to "insure the defendant what is reasonably due ..." him, *Baldacchino,* 762 F.2d at 179, Hogan contends that his expectation should be honored and his admissions inhumed. That contention, we think, is overly sanguine: to be availing, a party's expectation must be objectively reasonable. *See Arnett,* 628 F.2d at 1164; *Johnson v. Beto,* 466 F.2d 478, 480 (5th Cir.1972). Appellant's professed expectation is not.

For one thing, the pertinent terms of the Agreement militate strongly against the construction which Hogan urges. *See supra; see also* Agreement ¶ 9 (defendant acknowledges "that there are no further or other agreements, either express or implied, other than those contained in [the Agreement]"). For another thing, Hogan bargained for—and received—the prosecution's pledge "to make known to the judge the full nature and extent of Mark Hogan's cooperation, and any other information relevant to sentencing." Agreement ¶ 6. It is surpassingly difficult to fathom how the government could fulfill this promise without relating the whole of the story. Nothing in the Agreement requires the govern-

ment to cull from the debriefing only those tidbits which place the defendant in a favorable light—and if any such assurance were implied, it would likely be void as against public policy. *Cf.* 18 U.S.C. § 3577 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of any offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); Fed.R.Crim.P. 32(c)(2)(D). The sentencing judge faces an awesome responsibility. He has a right to expect that the prosecutor and the probation department, at the least, give him all relevant facts within their ken; half-truths and evasions will not do.

For a further demonstration that appellant had no reason to anticipate that the details developed during debriefing would be hidden from the judge, one need only peruse the transcript of the change-of-plea hearing.[4] During that session, the assistant United States Attorney described the Agreement as providing use immunity with respect to "violations of the federal drug laws *other than* those charged in the indictment" (emphasis supplied). Hogan agreed with this description and assured the judge that no promises had been given "other than [the] representations made in the written plea agreement itself. . . ." We have combed the transcript and find nothing which lends any credence to the idea that Hogan was justified in thinking that statements made during his debriefing would be sheltered from the scrutiny of the district judge. We can only assume that, to the extent appellant harbored such a notion, he had succumbed to what Chesterton is rumored to have called "the noble temptation to see too much in everything."

### IV

We summarize succinctly. Hogan, represented throughout by competent counsel, negotiated a plea agreement which provided unambiguously for use and derivative use immunity in regard to hitherto uncharged crimes. By the terms of the contract, that immunity did not restrict use of information furnished during debriefing in connection with the pled offenses. Hogan had no objectively reasonable basis for believing otherwise. Exactly the same can be said of the second appellant, Patricia Hogan. *See supra* note 1. For those reasons, inclusion of the challenged statements in the PSI, and their utilization during sentencing and beyond, was appropriate. *Accord United States v. Crisp,* 817 F.2d at 258–59.

We need go no further. From aught that appears, the government dealt fairly with the defendants. It essayed no end-run around the plea agreements, but to the contrary, stayed in the center of the field. Because the prosecution appears to have kept its side of the bargain, the judgments of conviction must be

AFFIRMED.

### APPENDIX

### AGREEMENT TO COOPERATE

The United States of America, by and through Richard S. Cohen, United States Attorney for the District of Maine, and Mark Hogan, acting for himself and through his counsel, Marshall Stern, Esq., enter into the following agreement based upon the promises and understandings set forth below:

1. Mark Hogan is presently under indictment in the case of *United States v. Mark Hogan, et al.,* Criminal No. 83–00052–B, United States District Court, District of Maine. Mark Hogan agrees to enter a plea of guilty to Counts One, Two, Ten, Fifteen and Thirty–Three of this indictment. At the time of sentencing the remaining counts of the indictment will be dismissed.

2. The purpose of this agreement is to secure the cooperation of Mark Hogan with

---

**4.** If the Agreement were deficient in that it failed to spell out a promise to the effect that what Hogan said would not count against him at sentencing on the pled offenses, the change-of-plea hearing would have marked the time to object. *See Crisp,* 817 F.2d at 259. No objection was made.

the United States in order to further the investigation and prosecution of those persons involved in the illegal drug trade. Mark Hogan understands that the United States is conducting an investigation into the violation of various federal laws by persons involved in the illegal drug trade. The Government believes that Mark Hogan has information regarding the criminal acts of his co-defendants and other persons who have not yet been indicted in regard to the illegal importation and distribution of controlled substances.

3. Mark Hogan agrees to meet with the agents of the Government as designated by United States Attorney Richard S. Cohen as needed to tell fully, honestly, truthfully and completely all that he knows or has heard concerning violations of federal law, including, but not limited to, his involvement and the involvement of others, and to answer all related questions in the same manner. He agrees to provide the Government or to aid the Government in acquiring all documents, photographs, bills, records, receipts, and all like material which he has in his custody, or to which he has access, which will corroborate his information. Mark Hogan further agrees to testify fully, honestly, truthfully and completely at any and all grand juries, trials or court proceedings in which his testimony is needed in the District of Maine or any other federal district. Mark Hogan agrees to meet with designated government agents or attorneys in preparation for any such testimony at grand juries, trials, or other court proceedings.

4. It is understood that should any of the information provided by Mark Hogan reveal any other violations of the Drug Abuse Prevention and Control Act, 21 U.S. C. § 801, et seq., other than those charged in the indictment mentioned in paragraph 1 of this agreement, that information will be deemed to have been given under use immunity and, therefore, cannot be used against him. He shall not receive use immunity regarding his involvement in the case mentioned in paragraph 1. Nothing of this agreement will preclude the prosecution of Mark Hogan for any serious violent crime should such become known through his own statements or otherwise.

5. It is further understood that the sentencing of Mark Hogan will be postponed until he completes his cooperation with the United States, including testifying in all relevant trials resulting from his cooperation.

6. It is understood that at the time of sentencing the Government and the defendant will both be free to make any recommendation allowed by the statute to which he is pleading guilty. The Government agrees to make known to the judge the full nature and extent of Mark Hogan's cooperation, and any other information relevant to sentencing.

7. If Mark Hogan should fail in any way to cooperate fully, honestly, truthfully and completely, the Government will be released from its commitments herein and this agreement will be null and void. The determination of whether Mark Hogan has given a full, complete and truthful accounting of his criminal activity and whether he has testified fully, truthfully and voluntarily shall be made solely by the Office of the United States Attorney for the District of Maine, but if a determination is made that Mark Hogan has not cooperated, it shall be based upon articulable facts and some credible evidence.

8. Nothing in this agreement will prevent the United States from instituting prosecution of Mark Hogan for perjury, false statement or false declaration if Mark Hogan commits such acts in connection with this agreement or otherwise. Additionally, Mark Hogan understands that the United States will not tolerate any further violations of federal or state laws by him, and should any become known, nothing in this agreement will preclude the prosecution of Mark Hogan by appropriate authorities for such violations.

9. Mark Hogan understands that there are no further or other agreements, either expressed or implied, other than those contained in this agreement.

10. Mark Hogan's signature in the space designated signifies his full and voluntary acceptance of this agreement.

RICHARD S. COHEN
United States Attorney
By (s) JAY P. McCLOSKEY
Assistant U.S. Attorney

Dated: December 17, 1986

I have read this agreement and have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it.

(s) Mark Hogan

Dated: 12/17/86

I represent Mark Hogan as his legal counsel. I have carefully reviewed every part of this agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

(s) Marshall Stern, Esq.
Attorney for Patricia Hogan

Dated: 12/17/86