**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Jose AMADO NUNEZ, Defendant.**

**No. Cr. 99–374 SEC.**

United States District Court,
D. Puerto Rico.

Dec. 27, 2000.

Maritza González–de–Miranda, U.S. Attorney's Office District of P.R., Civil Division, San Juan, PR, for plaintiff.

Joseph C. Laws, Epifanio Morales–Cruz, Federal Public Defender Office, San Juan, PR, Maria H. Saldoval, San Juan, PR, for defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court are Defendant's motion to withdraw his plea of guilty and to dismiss the Indictment. **(Docket # 42).** For the reasons set forth below, Defendant's motions are **DENIED.**

### Factual Background

An Indictment against Defendant was returned on December 8, 1999, charging him with trafficking and attempted trafficking of counterfeited tax stamps of the Treasury Department of Puerto Rico, a violation of 18 U.S.C. § 2320. Similarly, he was charged with transportation and attempted transportation of the same stamps from the Dominican Republic to Puerto Rico, a violation of 18 U.S.C. § 2314. Arraignment and bail hearings were heard on December 15, 1999. At the hearings, Defendant plead not guilty to both counts of the Indictment. Since Defendant had previously established his inability to obtain counsel, First Assistant Public Defender Epifanio Morales represented him at the hearings.

On January 5, 2000, a status conference was held to inform the Court about the status of Rule 16 Discovery matters and the possibility of a plea agreement. Additional time was requested and granted, until February 11, 2000, to inform the Court whether Defendant would plead guilty or go to trial. On February 11, 2000, Defendant filed a Change of Plea Motion.

On February 23, 2000, a change of plea hearing was held, at which time Defendant was again represented by Epifanio Morales. Prior to the hearing, through counsel, Defendant negotiated a plea agreement with the Government, pursuant to Fed.R.Crim.P. 11(e)(1)(A). At the hearing, the Court reviewed and accepted the plea agreement, and set Defendant's sentencing hearing for June 27, 2000.

However, on March 3, 2000, Attorney Morales requested leave to withdraw as counsel, which was granted on March 27, 2000. On April 3, 2000, Defendant's present counsel Maria Sandoval was appointed through the Clerk of the Court. After a series of continuances for various reasons, Defendant informed the Court that he intended to file the instant motion seeking to withdraw his plea of guilty and to dismiss the Indictment.

### 1. Motion to Withdraw Guilty Plea

**Applicable Law/Analysis**

"Once a guilty plea has been entered, a defendant has no absolute right to withdraw that plea." *United States v. Austin,* 948 F.2d 783 (1st Cir.1991). Therefore, the First Circuit has held that when analyzing a motion to withdraw a guilty plea under Fed.R.Crim.P. 32(d), such a motion "can be granted before sentencing only upon an affirmative showing of a fair and just reason." *United States v. Parrilla–Tirado,* 22 F.3d 368, 371 (1st Cir.1994). This standard requires the defendant to persuade the court that a fair and just reason exists. *See United States v. Gonzalez,* 970 F.2d 1095, 1100 (2nd Cir. 1992).

■ In testing Defendant's proffered justifications for withdrawal, "a court must look at the overall situation, most prominently (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed.R.Crim.P. 11, or otherwise legally suspect." *Parrilla–Tirado*, 22 F.3d at 371. Finally, even if the four factors are established by the Defendant, "the *nisi prius* court still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if the defendant is permitted to alter his stance." *Id.*

■ In the present matter, Defendant alleges that he plead guilty involuntarily. The basis for this averment is that on February 23, 2000, he was ineffectively counseled, by attorney Morales, to execute a document entitled "Waiver Regarding: Motion to Dismiss Based on Opinion Regarding the Appointment of the United States Attorney Guillermo Gil–Bonar." This waiver clearly indicates that Defendant waived his right to continue seeking a dismissal of his Indictment, if the Supreme Court were to vacate the Court of Appeals decision in *United States v. Fermin Hilario*, 218 F.3d 19 (1st Cir.2000). However, according to the Defendant, the waiver constitutes a renunciation of valuable rights, that were never incorporated in the plea agreement. Therefore, he concludes that the Government failed to provide anything in exchange for the waiver. The Court will now apply Defendant's argument to the Rule 32 framework.

### 1. The Plausibility of the Asserted Reasons

"A defendant bent on withdrawing a guilty plea must demonstrate a plausible reason for doing so." *Parrilla–Tirado*, 22

F.3d at 371, *citing United States v. Tilley*, 964 F.2d 66, 72 (1st Cir.1992). In this case, Defendant argues that he received nothing in return for his waiver; and therefore, he should be allowed to withdraw his guilty plea. This argument is premised on the oft stated theory that plea agreements are contractual in nature. *See, e.g., United States v. Atwood*, 963 F.2d 476, 479 (1st Cir.1992); *United States v. Hogan*, 862 F.2d 386, 389 (1st Cir.1988). While Defendant's analogy is in some regards proper, it "can only be carried so far, [because] [a]ny time a defendant pleads guilty, he receives some built-in benefits . . . ." *Parrilla–Tirado*, 22 F.3d at 371.

Despite Defendant's contention, it is clear that he received the full benefit of the bargain by entering the plea agreement. A cursory reading of the agreement itself evidences this fact. Especially where it states:

Jose Amado Nunez was charged in a two count Indictment, with a violation of Title 18, *United States Code*, Section 2320(a), intentionally and knowingly traffic or attempt to traffic eight hundred and eighty seven counterfeit tax stamps from the Treasury Department of Puerto Rico, and Section 2314, intentionally, unlawfully and fraudulently transport and cause to transport in foreign commerce from [the] Dominican Republic a falsely made and forged tax stamp of the Treasury Department of Puerto Rico on November 25, 1999. In this case the defendant will plead guilty to COUNT ONE of the Indictment and the United States will request the dismissal of COUNT TWO of the Indictment upon sentencing.

(Docket # 22, ¶ 1). This clause makes it is abundantly clear that Defendant received something of value for his plea—to wit: the dismissal of count two upon sentencing. Obviously, if Defendant had not entered the plea agreement, he could have been prosecuted and possibly convicted on this count. Thus, count two remained a

viable option for the Government, and its dismissal clearly benefitted the Defendant.

Instead of acknowledging this benefit, Defendant diverts his attention from the plea agreement to the waiver form. This strategy is misguided, for it is Defendant's burden to prove that he received nothing of value from the Government by entering the plea agreement; and he simply can not meet this burden.

### 2. Timing

"The timing of a motion to withdraw a guilty plea is significant. Delayed requests, even if made before sentencing, are generally regarded with disfavor." *Parrilla–Tirado*, 22 F.3d at 373, *citing United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir.1989). "The rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." *Parrilla–Tirado*, 22 F.3d at 373.

In this case Defendant informed the Court that he wished to file the present motion on October 30, 2000. This request came shortly after his new attorney received the Pre Sentence Report. Normally, the timing of such motions "serve to cast a long shadow over the legitimacy of his professed reasons for seeking to change course." *Id.* However, in this case, given that Defendant's request came shortly after his new counsel became familiar with the case, the Court can not conclude that his request is dilatory or necessarily represents a belated change of heart after the Pre Sentence Report arrived. Therefore, we will not hold the timing of Defendant's motion against him.

### 3. Claim of Innocence

When deciding whether a plea withdraw is fair and just, an important factor is whether the Defendant asserts his innocence. If he does, it may weight "the scales in favor of withdrawal, and conversely, the absence of a claim of innocence weights the opposite pan of the scales." *Id.; citing United States v. Doyle*, 981 F.2d 591, 596 (1st Cir.1992). In his motion, nowhere does Defendant profess his innocence of the crime charged. In fact he seems to freely admit that he committed the acts charged. However, he contends, in his motion to dismiss the Indictment, that these acts should have subjected him to prosecution in the local tribunal, instead of its federal counterpart. (Docket # 42, at 14). Therefore, this argument cuts deeply against allowing Defendant to withdraw his plea of guilty.

### 4. Voluntariness

The crux of Defendant's motion rests on his averment that his plea was not voluntary because his counsel advised him to waive his right to contest the appointment of Assistant United States Attorney Gil. When a defendant argues that his plea was not voluntarily entered because of ineffective assistance of counsel, the question then becomes "whether counsel's performance in advising guilty pleas fell below the standard of performance of reasonable proficient counsel and whether, by such inadequate performance, [defendant] was induced to enter guilty pleas which he otherwise would not have entered." *Austin*, 948 F.2d at 786; *United States v. Pellerito*, 878 F.2d 1535, 1537–38 (1st Cir. 1989) (*citing Hill v. Lockhart*, 474 U.S. 52, 57–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

We shall review counsel's advice, and begin our discussion with the issue of United States Attorney Guillermo Gil's interim appointment, which has been the subject of numerous legal opinions among the bar in the District of Puerto Rico. The matter concerned whether or not Gil's appointment was constitutional. At the district court, in *United States v. Peralta–Ramirez*, 83 F.Supp.2d 263 (D.P.R.2000), Judge Cerezo found Gil's position to be in violation of the Appointments Clause of the Constitution. However, the United States Court of Appeals in *United States v. Fermin Hilario*, 218 F.3d 19 (1st Cir.

2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 572, 148 L.Ed.2d 490 (2000), concluded that Gil's appointment is constitutional.

■ Here, Defendant argues that his attorney misrepresented the status of the law and erroneously induced him to sign the waiver, thereby precluding him from seeking dismissal of his Indictment based on Gil's appointment. However, the Court does not agree with Defendant's contention. First, the Court finds that counsel's advice to enter the waiver agreement was not a misrepresentation of the law. In fact, the advice proved to be the most prudent legal advice, as demonstrated by the decision by the First Circuit Court of Appeals. Moreover, the plea negotiations between the United States and Defendant were substantial and extensive, and during the negotiations Defendant's counsel requested additional time to consider their options and even proposed a counter-offer. Therefore, the Court finds counsel's performance with regard to the waiver and his representation during the plea negotiations both reasonable and proficient.

When reviewing the voluntariness of a plea of guilty, the Court must also consider the circumstances of the plea, and be mindful that the "absence of coercion, understanding of the charges and knowledge of the consequences of his guilty plea are the core concepts...." *United States v. Cotal–Crespo*, 47 F.3d 1, 7 (1st Cir.1995). In making this determination, the Court "should not exalt form over substance but should look to the reality of the situation as opposed to the ritual." *United States v. Dayton*, 604 F.2d 931, 939 (5th Cir.1979).

In this case the Court finds that Defendant entered his plea of guilty pursuant to the core concepts. First, there are no accusations of coercion made by Defendant. In fact, Defendant concedes that his counsel advised him in good faith. Similarly, as previously explained, the plea negotiations between the United States and Defendant were substantial and extensive, and during the negotiations Defendant's counsel requested additional time to consider Defendant's options and even proposed a counter-offer. All of this leads the Court to conclude that no coercion took place. Furthermore, the record reflects that the Defendant understood the charges against him and that he had knowledge of the consequences of his guilty plea.

In conclusion, given Defendant's reasons for withdrawal lack plausibility, the absence of any assertion of innocence, evidence showing he entered the plea voluntarily, and the totality of the attendant circumstances, Defendant's request to withdraw his plea of guilty is **DENIED**.

**2. Motion to Dismiss the Indictment**

Defendant, Amado–Nunez also alleges that both counts of the Indictment should be dismissed on jurisdictional grounds. In particular, Defendant maintains that 18 U.S.C. § 2314 is inapplicable because the Puerto Rico Treasury Stamps seized by the United States Customs Service are tax stamps of "a foreign government[1]" and as such, are categorically exempt from Section 2314. Furthermore, he argues that the tax stamps are not "commercial goods"[2] under 18 U.S.C. § 2320, and

---

**1.** The following provisions of Section 2314, entitled *Transportation of stolen goods, securities; moneys, fraudulent State tax stamps, or article used in counterfeiting*, are implicated here:
... Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited;
... Shall be fined not more than $10,000.00 dollars or imprisoned not more than ten years, or both.

... This Section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government.
18 U.S.C. § 2314.

**2.** Section 2320 states in pertinent part: "Whoever intentionally traffics or attempts to

therefore, the second count of the Indictment warrants dismissal as well. For the reasons stated below, Defendant's motion is **DENIED.**

In his first argument, Defendant maintains that Puerto Rico is a foreign government within the meaning of Section 2314; and therefore, its application to him is an unconstitutional exercise of the United States prosecutorial powers. The central theme of Defendant's argument is that Congress did not intend Section 2314 to apply to Puerto Rico. In support of his contention, Defendant relies on two Supreme Court cases. The first case is *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez,* the Court held that a statute prohibiting individuals from possessing a firearm in a school zone had nothing to do with interstate commerce or any other economic enterprise. Therefore, they concluded that Congress had violated the Commerce Clause by enacting such a sweeping statute. *Id.* at 567, 115 S.Ct. 1624. Furthermore, in *Cleveland v. United States,* 531 U.S. 12, 121 S.Ct. 365, 373, 148 L.Ed.2d 221 (2000), the Court held that Louisiana did not have a property interest, within the meaning of the mail fraud statute, when it issued a license to operate video poker machines. The Court also reiterated that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes." *Id.* (internal citations omitted).

■ When a Court is called upon to interpret a statute, we begin with the plain language, and ask whether Congress has spoken on the issue before us. *Norfolk & Western v. American Train Dispatchers,* 499 U.S. 117, 129, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991). For if we find the intent of Congress clear, that ends our inquiry, because the Court is duty-bound to follow the unambiguously expressed Congressional intent. *Id.* Moreover, "in determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context". *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000) (citations omitted).

■ Despite Defendant's contentions to the contrary, viewing the Stolen Property Act as a whole, it is evident that Section 2314 applies to tax stamps of Puerto Rico. Section 2314 is entitled "Transportation of stolen goods, securities; moneys, fraudulent **State tax stamps,** or article used in counterfeiting," and it criminalizes the transportation in interstate or foreign commerce of any of the items listed in the definition. Defendant argues that since Section 2314 does not specifically define the term "state," the Court should infer that Congress intended not to include Puerto Rico within the statute. However, as noted above our task here is not to view Section 2314 in isolation, but within the context of the Stolen Property Act.

We begin by examining the definitions section of the Act, which defines tax stamps as "any tax stamp, tax token, tax meter imprint, or any other form of evidence of an obligation running to a State, or evidence of the discharge thereof." 18 U.S.C. § 2311. While this Section clearly demonstrates Congressional intent as to tax stamps, it does not define "state" for the purposes of the Act. However, 18 U.S.C. § 2315, entitled "Sale or receipt of stolen goods, securities, moneys, or fraudulent **State tax stamps,**" states that "[f]or **the purposes of this section, the term "State" includes a State of the United States, the District of Columbia, and**

traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both...." 18 U.S.C. § 2320(a).

any commonwealth, territory, or possession of the United States." *Id.*

When viewed in context, it is clear that Congress intended Puerto Rico to be a "State" for the purposes of this Act. We find this result logical because Section 2314, the statute the Defendant is charged with violating, criminalizes the transportation of fraudulent state tax stamps; and then the following Section, Section 2315, criminalizes the sale or receipt of the same fraudulent state tax stamps. Moreover, Section 2315 then proceeds to define the term "state" as set forth above. Therefore, based on the relatedness of the two statutes, and the fact that Section 2315 explicitly defines the term State[3], the Court finds that Congress did not intend to exclude Puerto Rico, as a foreign government, from the Stolen Property Act. Thus, Defendant's motion to dismiss this count of the Indictment is **DENIED.**

■ With regard to the other count, an alleged violation of the Trademark Counterfeiting Act of 1984, 18 U.S.C. § 2320, Defendant correctly states that it is intended to punish the counterfeiting of commercial goods. However, he disagrees with its application in his case, since he maintains that tax stamps are not commercial goods within the meaning of the Act. Defendant, however, does not go beyond a bald assertion that nothing in the legislative history or language suggests that this the Government can use this statute to prosecute the counterfeiting of tax stamps. (Docket # 42, at 14). Although the term "commercial goods" is not defined by the Act, this is a common legal term of broad meaning intended to include all goods bought or sold in commerce.[4] The tax stamps are a good bought and sold in commerce, which have value. 13 P.R.Laws Ann. § 311. Therefore, the Court finds that they are goods sold in commerce for the purposes of Section 2320 of the Act. Based on this finding, we will now review the sufficiency of the Indictment.

■ To prove a violation of 18 U.S.C § 2320(a), the Government must establish that (1) the defendant trafficked or attempted to traffic in goods or services; (2) such trafficking, or the attempt to traffic, was intentional; (3) the defendant used a counterfeit mark on or in connection with such goods or services; and (4) the defendant knew that the mark so used was counterfeit. *U.S. v. Sultan,* 115 F.3d 321, 325 (5th Cir.1997). Therefore, in order to pass constitutional muster, the Indictment must describe the offense "with sufficient clarity to show a violation of law, and enables the accused to know the nature and cause of the accusation against him and to plead an acquittal or conviction in bar of future prosecution for the same offense." *United States v. Stein,* 233 F.3d 6 (1st Cir.2000).

In the case at bar, the Indictment, by substantially tracking the statutory language, meets these requirements by stating:

> ... On or about November 25, 1999 in the Judicial District of Puerto Rico defendant, Jose Amado Nunez, intentionally did traffic in goods (or services), to wit, eight hundred eighty seven (887) decals in his luggage. The decals had the seal of the Puerto Rico Treasury Department (Departamento de Hacienda) with approximately fifty (50) different sets of serial numbers. The serial numbers were repeated and/or duplicated within the fifty (50) different sets of decals, and knowingly used counterfeit marks on and in connection with such goods (or services), that is, 887 decals, which counterfeit marks were identical

---

3. This is the case because Section 2315 defines state as a territory, commonwealth or possession of the United States, and Puerto Rico therefore, would be included in this broad definition.

4. Goods are "[t]angible or moveable personal property other than money; esp., articles of trade or items of merchandise." Black's Law Dictionary 701 (7th ed.1999).

with and substantially indistinguishable from the genuine marks in use and registered for those goods (or services) on the principal register in the United Sates Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake, and to deceive, [in] violation of Title 18, United States Code, Section 2320. (Docket # 1).

In sum, neither of Defendants arguments for dismissal are persuasive, therefore, his motion to dismiss the Indictment is **DENIED.**

**Conclusion**

Based on the foregoing, Defendant's motion to withdraw his guilty plea and motion to dismiss the Indictment are **DENIED.**

**SO ORDERED.**