USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1786 UNITED STATES, Appellee, v. CARL LALIBERTE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Martha S. Temple, with whom Foote & Temple was on brief for _________________ _______________ appellant. Margaret D. McGaughey, Assistant United States Attorney, with whom Jay _____________________ ___ P. McCloskey, United States Attorney, were on brief for appellee. ____________ ____________________ May 31, 1994 ____________________ CAMPBELL, Senior Circuit Judge. On February 18, _____________________ 1992, Carl Laliberte was charged in a five-count indictment with conspiring with seven others to possess in excess of five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(A), 846 (1988) (Count One), possessing cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(B) (1988) and 18 U.S.C. 2 (1988) (Counts Two through Four), and using real property to commit violations of 21 U.S.C. 841(a)(1), 846 (1988) so that the property was subject to forfeiture pursuant to 21 U.S.C. 853 (1988) (Count Five). On April 27, 1992, Laliberte pleaded guilty to Counts One and Five pursuant to an Agreement To Plead Guilty And Cooperate (the "Cooperation Agreement") entered into with the United States Attorney for the District of Maine (the "Government") pursuant to Fed. R. Crim. P. 11. On October 6, 1992, Laliberte, prior to sentencing, filed a motion to withdraw his guilty plea. The United States District Court for the District of Maine, on May 21, 1993, entered a memorandum of decision and order denying Laliberte's motion. Laliberte appeals from this decision. We affirm. I. The April 27, 1992, Cooperation Agreement between Laliberte and the Government, in addition to requiring -2- Laliberte to plead guilty to Counts One and Five, provided, inter alia, that Laliberte would _____ ____ meet with attorneys and agents of the Government, as needed, to tell fully, honestly, truthfully and completely all that the defendant kn[ew] or ha[d] heard about violations of federal and state laws, including but not limited to the defendant's involvement and the involvement of others in violations of law . . . . The defendant agree[d] to provide the Government or aid the Government in acquiring all documents, photographs, bills, records, receipts and all like materials to which the defendant ha[d] access, which w[ould] corroborate this information. Defendant further agree[d] to testify fully, honestly, truthfully and completely at any and all grand juries, trials or other official proceedings in which his testimony [was] requested. Laliberte also consented to "assist the United States in effecting the forfeiture or other transfer of any property . . . subject to forfeiture to the United States under any law of the United States." In exchange for Laliberte's compliance with its terms and conditions, the Cooperation Agreement stated that the Government (1) "may petition the Court for the imposition of any lawful sentence," see Fed. R. ___ Crim. P. 11(e)(1)(B), and (2) "will move to dismiss Counts Two, Three and Four of the indictment after sentence is imposed,"1 see Fed. R. Crim. P. 11(e)(1)(A). The ___ Cooperation Agreement left to the sole judgment of the United ____________________ 1. Counts Two through Four were, in fact, dismissed on the Government's motion. -3- States Attorney for the District of Maine whether Laliberte had complied with its terms and conditions although the Government promised that, at Laliberte's request, it would "make known the cooperation provided by defendant to any individual or entity to whom defendant wishe[d] such information disseminated." A decision that Laliberte had not cooperated was to have "a material and articulable basis." Finally, the Cooperation Agreement expressly stated that "[n]othing in this agreement shall be interpreted to require the United States to move the Court pursuant to United States Sentencing Commission Sentencing Guideline Section 5K1.1 for a downward departure." Laliberte maintains, and the record tends to confirm, that after the execution of the Cooperation Agreement he assisted the Bureau of Intergovernmental Drug Enforcement (the "BIDE") and the Drug Enforcement Agency (the "DEA") on at least one occasion. His cooperation was in regard to the controlled purchase of six pounds of marijuana a transaction that led to the arrest, on May 4, 1992, of an individual named Hank Dresser the seizure of fifteen pounds of marijuana, and the criminal forfeiture of a residence. Laliberte's collaboration was, however, short- lived. On May 5, 1992, James Hollywood, United States Pretrial/Probation Officer, complained to the district court -4- by memorandum that his office had not been told that Laliberte was assisting government agents. Hollywood asserted that it was improper for Laliberte to cooperate without the permission of the court and others, including the probation officer. In response, the district court issued an order on May 6, 1992, directing the cessation of Laliberte's active law enforcement cooperation.2 About three months later, on August 10, 1992, the Government filed a motion requesting the district court to permit Laliberte to resume his active cooperation with law enforcement agencies. This motion was allowed on August 15, 1992. On September 30, 1992, however, it appears that the district court vacated its August 15, 1992, order, and ____________________ 2. The order stated: It having been brought to the attention of the Court that the Defendant herein, Carl Laliberte, has been engaged in active law enforcement ______ cooperative activities at the instigation of BIDE and DEA officials . . . without first seeking the consent of Defendant's supervising officer and the ___ approval of the Court, and that such activity ________________________ interferes with, disrupts, and defeats the Court's efforts, through its duly appointed officers, to properly supervise said Defendant while he is subject to the authority of the Court. It is hereby, in consequence thereof, ORDERED _______ that all active participation of Defendant Carl Laliberte in cooperative or other law enforcement activity CEASE, forthwith, pending further order of _____ this Court. (emphasis in original). -5- reinstated its May 6, 1992, order which had proscribed Laliberte's active cooperation. Nearly a week later, on October 6, 1992, Laliberte moved to withdraw his guilty plea pursuant to Fed. R. Crim. P. 32(d).3 The motion asserted, inter alia, that, following _____ ____ the district court's May 6, 1992, order, Laliberte's counsel had asked the Government on May 8, June 17, and June 25 to take whatever action was necessary to have that order lifted. Laliberte's motion further maintained that the Government had "refused to take any action to have the order lifted, and [had] informed defense counsel of its position that the [district court] lack[ed] the authority to interfere with the active cooperation of a defendant with government agents, and that it would not seek the [district court's] permission to allow such active cooperation because to do so would acknowledge that authority." In light of the Government's alleged "failure to provide the information requested by the Probation Officer to consider consenting to the defendant's cooperation, and its failure to seek the approval of the [district court] to allow such cooperation," the withdrawal ____________________ 3. Fed. R. Crim. P. 32(d) states in relevant part: If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. . . . -6- motion argued that Laliberte had been denied "the opportunity to earn the filing of a motion for downward departure which the Government had promised him." In this same vein, the final paragraph of the motion concluded: Since the Government would not have allowed the defendant to actively cooperate unless he agreed to plead guilty, and since the Government's representation to the defendant that he would be given the opportunity to earn a downward departure through such active cooperation was the most significant factor in the defendant's determination to plead guilty, the Government's failure to seek the consent of the Probation Officer and the approval of the [district court] in a timely manner to allow such active cooperation frustrated the very basis of the defendant's decision to enter into the plea agreement and to plead guilty. On May 21, 1993, the district court denied Laliberte's motion, concluding that he had "failed to meet his burden of demonstrating a `fair and just' reason to withdraw his plea of guilty entered in this case." In spite of the district court's having prohibited Laliberte from actively assisting in cooperative law enforcement activities, the Government, on June 15, 1993, moved both to dismiss Counts Two, Three and Four, and for a downward departure in his sentence, pursuant to U.S.S.G. 5K1.1 and 18 U.S.C. 3553(e) (1988). The Government declared that Laliberte had substantially assisted "in the investigation and apprehension of others." The district -7- court granted the Government's motion, dismissing the three counts and reducing Laliberte's prison term to sixty months from the applicable Sentencing Guidelines range of seventy- eight to ninety-seven months.4 Laliberte was also sentenced to serve four years of supervised release and to forfeit his interest in real property in Auburn, Maine. Judgment was entered on July 12, 1993. On appeal, Laliberte now contends that the district court abused its discretion when on May 21, 1993, it denied his motion to withdraw his guilty plea. In considering his argument, we consider the May 21, 1993, order in light of the subsequent sentencing actions, including the Government's request, accepted by the court, to dismiss the three counts and reduce the sentence. II. A. The district court's decision denying Laliberte's motion to withdraw his guilty plea is reviewed solely for abuse of discretion. See United States v. Parrilla-Tirado, ___ ______________ _______________ F.3d , , 1994 WL 143251, at *1 (1st Cir. Apr. 28, 1994) ("[W]e review the district court's decision to grant or deny a request to withdraw a guilty plea solely for abuse of ____________________ 4. The district court calculated the Sentencing Guidelines range based on its conclusion that Laliberte's Adjusted Total Offense Level was twenty-seven (27) and that he fell into a Criminal History Category of II. -8- discretion." (citing United States v. Doyle, 981 F.2d 591, _____________ _____ 594 (1st Cir. 1992), and United States v. Pellerito, 878 F.2d _____________ _________ 1535, 1538 (1st Cir. 1989))). In Parrilla-Tirado, we observed that a motion to _______________ withdraw a guilty plea brought before sentencing, such as the one here, is reviewed under a more liberal standard than a motion filed after sentencing. Id. at *2 (citing Fed. R. ___ Crim. P. 32(d) advisory committee's note ("Under the amendment, a defendant who proceeds too late to come under the more generous `fair and just reason' standard must seek relief under 2255, meaning the applicable standard is that stated in Hill v. United States, 368 U.S. 424 (1962): `a ____ ______________ fundamental defect which inherently results in a complete miscarriage of justice' or `an omission inconsistent with the rudimentary demands of fair procedure.'")). Nevertheless, "a defendant does not have an automatic right to withdraw his plea even at that comparatively early stage." Id. (citing ___ United States v. Buckley, 847 F.2d 991, 998 (1st Cir. 1988), ______________ _______ cert. denied, 488 U.S. 1015, 109 S. Ct. 808, 102 L. Ed. 2d ____________ 798 (1989), and United States v. Kobrosky, 711 F.2d 449, 454 _____________ ________ (1st Cir. 1983)). Rather, a motion to withdraw a guilty plea brought before sentencing will be granted only "upon a showing by the defendant of any fair and just reason." Fed. R. Crim. P. 32(d); Parrilla-Tirado, 1994 WL 143251, at *2. _______________ The burden of persuasion as to the existence of such a reason -9- falls upon the defendant. Parrilla-Tirado, 1994 WL 143251, _______________ at *2 (citing United States v. Gonzalez, 970 F.2d 1095, 1100 _____________ ________ (2d Cir. 1992), and Fed. R. Crim. P. 32(d) advisory committee's note). To decide whether the reason for withdrawal proffered by the defendant is "fair and just," courts consider a number of factors, including: (1) the plausibility [and the force] of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) [most importantly,] whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed. R. Crim. P. 11, or otherwise legally suspect. Id. (citing United States v. Doyle, 981 F.2d 591, 594 (1st ___ _____________ _____ Cir. 1992), and United States v. Pellerito, 878 F.2d 1535, ______________ _________ 1537 (1st Cir. 1989)) (footnote omitted). Additionally, "[i]f the combined weight of these factors tilts in the defendant's favor, then the court must also assess the quantum of prejudice, if any, that will inure to the [G]overnment" before it permits the defendant to withdraw his plea. Doyle, 981 F.2d at 594; e.g., Parrilla-Tirado, 1994 WL _____ ____ _______________ 143251, at *2; Pellerito, 878 F.2d at 1537. _________ -10- B. We apply the above-listed factors seriatim. 1. Plausibility and Force of the Proffered ______________________________________________ Reasons. A defendant may not renounce his guilty plea _______ without advancing a plausible reason for doing so. See, ___ e.g., Parrilla-Tirado, 1994 WL 143251, at *2; Doyle, 981 F.2d ____ _______________ _____ at 594; United States v. Tilley, 964 F.2d 66, 72-73 (1st Cir. _____________ ______ 1992). Laliberte argues that he should have been allowed to withdraw his guilty plea because, by virtue of the district court's sua sponte order prohibiting him from actively ___ ______ assisting the BIDE and the DEA, he was denied the opportunity to perform his end of the Cooperation Agreement, or, as he says, he was compelled "to breach the agreement he signed." Had the district court's prohibition operated so as to deny Laliberte the benefit of his bargain, that might indeed have been a plausible reason to allow him to renounce his plea. But Laliberte mischaracterizes what actually happened. Laliberte pled guilty on the basis of a so-called Cooperation Agreement, which burdened him with meeting with government agents, "as needed," to tell all he knew about violations of law and providing testimony and other assistance, as requested. If he did this, the Cooperation Agreement provided that the Government (1) "may petition the Court for the imposition of any lawful sentence," and (2) would "move to dismiss Counts Two, Three and Four of the -11- indictment after sentence [was] imposed." The U.S. Attorney was to be the sole judge of Laliberte's compliance, and promised to make known Laliberte's cooperation to anyone Laliberte requested. The Cooperation Agreement flatly stated that nothing therein required the Government "to move the Court pursuant to United States Sentencing Commission Sentencing Guideline Section 5K1.1 for a downward departure." In fact, the Government ultimately moved to dismiss, and the district court dismissed, Counts Two, Three and Four of the indictment, thus giving to Laliberte the full benefit of its promise under (2). The Government also complied with (1) by petitioning for "a lawful sentence," and, in so doing, disregarded its right, elsewhere stated, not to seek a downward departure. To Laliberte's benefit, ___ the Government moved for, and the district court granted, a significant downward departure in Laliberte's sentence on the grounds of his substantial assistance. The Government's recommendations, incorporated in the district court's final judgment, accordingly gave Laliberte the full benefit of his bargain for dismissal of the three charges, and also gave Laliberte an additional, unpromised benefit (the downward departure) that the Cooperation Agreement had expressly stated the Government was not required to provide. The stated premise of these ___ -12- benefits was that Laliberte had substantially assisted, thus performing his share of the bargain as to cooperating. Whatever can be said had Laliberte been denied these benefits ______ because of asserted non-cooperation, we can see no basis for his claim of having been denied the right to perform his share of the agreement where the Government acknowledged that he had met his obligations and accorded him everything promised in the event of his performance with a sizable bonus (the downward departure) to boot. Laliberte suggests that had he been allowed to cooperate for the entire time, he would, in some way not explained, been so extraordinarily helpful that the Government might have requested an even greater downward departure. But as the Government pointed out at argument, what opportunities are extended to an informer to help catch others are necessarily always subject to the Government's control and veto. The Cooperation Agreement, moreover, was devoid of any promise by the Government to allow Laliberte the right to engage in unlimited cooperation; cooperation was rather a duty imposed on Laliberte as needed and requested ____ ______ _________ a duty which, if satisfied in the opinion of the U.S. Attorney, would result in the guaranteed dismissal of three counts and possibly, though only by implication, some unspecified recommendations for sentencing leniency. Whatever promise of sentence reduction was implied, however, -13- was offset by the Government's express disclaimer of any right to a downward departure. Under the Cooperation Agreement as so written, Laliberte would doubtless have been entitled to complain had his chance to cooperate been so vitiated as to remove all possibility of earning the promised dismissal of the three counts, and possibly although far less clearly to earn some sentencing leniency. But where, as here, his cooperation sufficed both to secure dismissal of the three counts and a discretionary downward departure, we ___ see no plausibility in the claim that he was deprived of a fair and sufficient chance to fulfill his part of the contract. 2. Timing. "The timing of a motion to withdraw a ______ guilty plea is significant. Delayed requests, even if made before sentencing, are generally regarded with disfavor." Parrilla-Tirado, 1994 WL 143251, at *4 (citing Pellerito, 878 _______________ _________ F.2d at 1541); e.g., Doyle, 981 U.S. at 595. Generally, the ____ _____ longer a defendant waits before bringing his motion to withdraw his guilty plea, the more forceful his reasons in support of withdrawal must be. E.g., Parrilla-Tirado, 1994 ____ _______________ WL 143251, at *4; Doyle, 981 F.2d at 595. This principle _____ obtains because, "[w]hile an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens -14- any claim that the plea was entered in confusion or under false pretenses." Doyle, 981 F.2d at 595 (citing cases). _____ Here, Laliberte entered his guilty plea on April 27, 1992. The district court's order prohibiting his active involvement with law enforcement agencies was filed just a little more than a week later on May 6, 1992. Although the district court vacated that order on August 15, 1992, Laliberte contends that, by that time, he had lost all opportunity to cooperate because sentencing was then scheduled for September 21, 1992.5 Accordingly, Laliberte moved the district court to withdraw his guilty plea on October 6, 1992 more than five months after he had entered it and five months to the day after the district court's May 6, 1992, order. Laliberte attributes much of this five-month delay to time "spent trying to resolve the problem" created by the district court's order. One can argue, however, that Laliberte's efforts to promote the efficacy of the Cooperation Agreement over several months after its execution make it less likely that he entered his guilty plea in "confusion or under false pretenses." Id. But because the ___ timing issue is essentially immaterial to our outcome here, we see no need to resolve it. Even assuming the motion was timely, it fails on its merits. ____________________ 5. Sentencing was eventually continued until the first week of July 1993. -15- 3. Claim of Innocence. Courts look more _____________________ favorably on a motion to withdraw a guilty plea when the motion is accompanied by an assertion of innocence. E.g., ____ Parrilla-Tirado, 1994 WL 143251, at *4; Doyle, 981 F.2d at _______________ _____ 596. Conversely, "the absence of a claim of innocence weighs in favor of allowing a guilty plea to stand." Doyle, 981 _____ F.2d at 596; e.g, Parrilla-Tirado, 1994 WL 143251, at *4. In ___ _______________ this case, Laliberte concedes that he admitted his guilt at the Rule 11 proceeding. See Fed. R. Crim. P. 11. Neither ___ his motion to withdraw his guilty plea nor his appellate brief contains an assertion of innocence.6 "Thus, this factor cuts sharply against allowing [Laliberte's] motion to withdraw his guilty plea." Parrilla-Tirado, 1994 WL 143251, _______________ at *4. 4. Voluntariness. "In assaying the merits of a _____________ motion to withdraw, an inquiring court must determine whether, in light of the defendant's proffered reason and any newly disclosed facts, the plea may still be deemed voluntary and intelligent." Doyle, 981 F.2d at 596 (citing United _____ ______ States v. Austin, 948 F.2d 783, 786-87 (1st Cir. 1991), and ______ ______ ____________________ 6. The district court noted that Laliberte argued in Defendant's Reply To Government's Opposition To Defendant's Motion To Withdraw Guilty Plea that he had represented his legal innocence to his counsel. The district court was not impressed by this argument, observing that at no time during the proceedings did Laliberte assert his legal innocence to the court. -16- United States v. Allard, 926 F.2d 1237, 1245-47 (1st Cir. _____________ ______ 1991)). Laliberte maintains that he would not have voluntarily entered a guilty plea had he known that within a month of doing so the district court would proscribe his active cooperation with law enforcement agencies, and thereby vitiate his ability to earn a downward departure in his sentence.7 We think, however, that the denial of Laliberte's motion to withdraw his plea must now be reviewed in light of the Government's actual recommendations and the final judgment that was entered. This court asks simply whether, given what finally happened, including the Government's favorable recommendations, the court's dismissal of the counts, and the reduced sentence, Laliberte's plea still appears to have been voluntary and intelligent. For reasons already largely discussed above, see supra part ___ _____ II.B.1, the answer is clearly "Yes." It is true the district court's May 6, 1992, order prevented Laliberte from continuing to assist government agencies during much of the period prior to sentencing. Still, he rendered some assistance and, more to the point, that assistance sufficed for him to receive all the benefits and more promised to him in the Cooperation Agreement ____________________ 7. Laliberte does not argue that his initial decision to plead guilty was made involuntarily, unintelligently, or in violation of the requirements of Rule 11. -17- in return for his assistance. In exchange for Laliberte's promise to plead guilty to Counts One and Five and to cooperate with government agencies, the Government, in the Cooperation Agreement, had agreed to "move to dismiss Counts Two, Three and Four of the indictment after sentence [was] imposed." The Government further said that it "may petition the Court for the imposition of any lawful sentence," although the Cooperation Agreement expressly stated that "[n]othing in this agreement shall be interpreted to require the United States to move the Court pursuant to United States Sentencing Commission Sentencing Guideline Section 5K1.1 for a downward departure." Thus, Laliberte voluntarily pleaded guilty on April 27, 1992, with no assurances whatever, but only a bare hope, that he would receive a downward departure in his sentence. Ultimately, the district court, pursuant to the Government's motions, not only dismissed Counts Two, Three and Four, but also, by downward departure, reduced Laliberte's prison term to sixty months from the guideline range of seventy-eight to ninety-seven months. Accordingly, when viewed in light of all of these "emergent circumstances" ___ not just the district court's May 6, 1992, order revealing that Laliberte received no less and, indeed, more than he had been promised if he pleaded guilty, we cannot say that Laliberte's guilty plea was rendered involuntary or unintelligent by subsequent events. -18- Affirmed. ________ -19-