# United States Court of Appeals
## For the First Circuit

No. 10-1938

OMAR MORENO-ESPADA,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Alexander Zeno, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom
Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, were on brief for appellee.

January 19, 2012

**TORRUELLA, Circuit Judge.** Omar Moreno-Espada ("Moreno") pled guilty to two counts related to his involvement in a drug selling conspiracy in the Coamo, Puerto Rico area. Sentenced to 108 months imprisonment and 8 years supervised release, this is the second time Moreno brings his case before this Court: along with two co-defendants, Moreno previously pursued a direct appeal, alleging that errors in the plea proceedings rendered his plea invalid. We affirmed. See United States v. Moreno-Espada, No. 06-2759 (1st Cir. Sept. 17, 2008) (unpublished opinion). Moreno now appeals the district court's denial of his subsequent petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, on grounds that he received ineffective assistance of counsel in violation of the Sixth Amendment. After careful review of Moreno's claim, we affirm the district court's judgment.

## I. Background

On November 9, 2005, Moreno was indicted for conspiring to possess with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin within 1,000 feet of a public housing project[1] in violation of 21 U.S.C. §§ 841, 846, and 860, and conspiring to unlawfully possess, use, or brandish a firearm in furtherance of or during and in relation to a drug

---

[1] Specifically, the Las Palmas Public Housing Project in Coamo, Puerto Rico.

-2-

trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(o).

Moreno initially pled not guilty to the charged counts, but later moved to change his plea. On April 3, 2006, at a change of plea hearing, Moreno pled guilty to both counts and filed a plea agreement. As filed with the magistrate judge, the plea agreement between Moreno and the government stipulated to a total offense level of 29. This calculation stipulated that Moreno was accountable for at least 3.5 kilograms but less than 5 kilograms of cocaine, yielding a base offense level of 30 pursuant to U.S.S.G. § 2D1.1. In addition, it reflected a 2-level enhancement for possession of a firearm under § 2D1.1(b)(1) and a 3-level reduction for acceptance of responsibility under § 3E1.1. The agreement also stated that a "safety valve" reduction was inapplicable and assumed (but did not stipulate) to a criminal history category ("CHC") of I. Taken together, these factors yielded a sentencing guidelines range of 87 to 108 months of imprisonment and a statutory maximum sentence of 40-years imprisonment. Ultimately, the agreement recommended 87 months imprisonment and 4 years of supervised release for Moreno.

During the change of plea hearing, the presiding magistrate judge informed Moreno that the submitted plea agreement, rendered pursuant to Fed. R. Crim. P. 11(c)(1)(A)-(B), was precatory in nature, that his sentence would ultimately be "within

-3-

the sound discretion of the sentencing judge," and that the sentencing court would "not be able to determine the Guideline Sentence" until Moreno's presentence investigation report ("PSR") was completed. The magistrate judge also explained to Moreno that the sentencing court could impose a sentence as high as permitted by the statutory maximum and that Moreno could not withdraw his guilty plea if this happened. Moreno stated that he understood the rights he waived and expressed that he was satisfied with his attorney, Rafael Anglada ("Anglada"), whom Moreno said had provided effective legal assistance. On April 4, 2006, the magistrate judge submitted a report recommending that the district court accept Moreno's guilty plea, an action the district court took on April 12, 2006.

Although the proceedings relating to Moreno were otherwise executed in textbook-like fashion up to this point, a problematic oversight -- uncorrected by the magistrate judge, Anglada, or the government -- is crucial to Moreno's appeal: at the time Moreno pled guilty, his plea agreement did not fully account for Moreno's potential sentence exposure. Specifically, a 2-level sentence enhancement under U.S.S.G. § 2D1.2(a)(1) -- relevant to Moreno because the charged drug offense took place "within one thousand feet of . . . [a] housing facility owned by a public housing authority," 21 U.S.C. § 860(a), and clearly applicable on the indictment's terms -- was omitted from Moreno's

plea agreement with the government. Had this enhancement been factored into the agreement's calculations, it would have shown the proper sentencing guideline range as to Moreno to be 108 to 135 months imprisonment with a minimum supervised release term of 8 years.

On May 18, 2006, Anglada filed a motion to withdraw Moreno's guilty plea and withdraw his representation. The motion explained that Moreno wished to withdraw his plea because he had learned from his brother, one of his co-defendants, that the government's evidence against him contained "many lies." The motion further averred that Moreno had not seen the entered plea agreement until the day of the hearing and that Moreno no longer agreed with the agreement's contents. The district court rejected Anglada's request to withdraw as counsel and denied the motion to withdraw Moreno's guilty plea, noting that Moreno did not describe the alleged "lies" in the government's evidence, that Moreno had stated that he was satisfied with his representation during the change of plea hearing before the magistrate judge, and that, contrary to what his motion alleged, Moreno's remarks and admissions at the plea hearing undercut his claim that he was "pressured" to plead guilty.

On November 7, 2006, Moreno's PSR was issued. Unlike the plea agreement, the PSR correctly calculated Moreno's sentencing exposure and included the 2-level enhancement under § 2D1.2(a)(1),

assigning Moreno a total offense level of 31 instead of 29, and a sentencing guidelines range of 108 to 135 months imprisonment.[2]

Moreno's sentencing hearing was then held on November 14, 2006. The government and Moreno's counsel objected to the PSR's inclusion of the "protected location" enhancement, explaining that the parties had not contemplated it in their plea negotiations.[3] The court overruled these objections, noting that the plea agreement's stipulated facts and the indictment both explicitly referenced the fact that the charged offense had taken place in a housing project, a protected location. The district court also concluded that the objections were not preserved because they were either never filed or were untimely. The district court then sentenced Moreno to 108 months imprisonment, the minimum term within the PSR-suggested range, for each charged offense, to be served concurrently, as well as 8 years of supervised release for the first offense and 3 years supervised release for the second offense, to be concurrently served.

Moreno challenged the validity of his plea on direct appeal to this Court, claiming that "the factual predicate for his

---

[2] Properly calculated, the statutory maximum term of imprisonment as to Moreno also changed from 40 to 80 years.

[3] At sentencing, Anglada declared that "the parties . . . never contemplated the presence of [the § 2D1.2 enhancement] in the indictment." Echoing Anglada's assertion, the government stated that "the parties didn't in fact discuss the [] enhancement." The government stood by the plea agreement and recommended a sentence of 87 months imprisonment.

guilty plea . . . was inadequate."  Moreno-Espada, No. 06-2759, slip op. at 2 (1st Cir. Sept. 17, 2008) (unpublished opinion).  On September 17, 2008, we rejected Moreno's claims along with those of two of his co-defendants.  In doing so, we explained that Moreno and his co-appellants failed to meet their burden of establishing that the flaws in the disclosure of their full sentencing exposure prejudiced their substantial rights.  Id.  Reviewing under a plain error standard because neither Moreno nor his co-defendants moved to withdraw their guilty pleas once their PSRs revealed the flaws in their plea agreements, we held that the appellants could not establish a reasonable probability that the outcome of their cases would have been different in the absence of error.  Id.

Undaunted, Moreno subsequently filed the present claim to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, now contending that Anglada's failure to consider the full effects of the charged offense on the sentence that the district court could impose constituted ineffective assistance of counsel. Because Anglada did not advise him that a guilty plea could result in a sentence within a range of 108 to 135 months imprisonment instead of the 87 to 108 months reflected in his plea agreement, Moreno claimed that he did not understand the consequences of pleading guilty.  In addition, Moreno's motion alleged that Anglada failed to communicate to him that he had the right to withdraw his plea before sentencing if he believed he had a "fair and just

reason" to do so, or risk bearing a greater burden on appeal to this Court. See Fed. R. Crim. P. 11(d)(2)(B); United States v. Delgado-Hernández, 420 F.3d 16, 19 (1st Cir. 2005) (noting defendant's claim "subject only to plain error review on direct appeal" where defendant "failed to call the district court's attention to the alleged errors in the plea proceedings"); see also United States v. Mercedes-Mercedes, 428 F.3d 355, 359 (1st Cir. 2005) ("The barriers to withdrawal of a guilty plea become more formidable when . . . the request is not made until after sentence has been imposed.").

The district court denied Moreno's § 2255 petition, dismissing it with prejudice on June 8, 2010. Moreno-Espada v. United States, No. 09-1848CCC, 2010 WL 2404444 (D.P.R. June 8, 2010). The district court concluded that even if deficient representation was assumed under the first prong of the ineffective assistance of counsel test prescribed by Strickland v. Washington, 466 U.S. 668 (1984), Moreno still could not show that he was prejudiced by Anglada's performance, in large part because Moreno was told during the plea colloquy that the district court was not bound by the parties' plea agreement. This appeal followed.

## II. Discussion

Under 28 U.S.C. § 2255, a convict in federal custody may petition the sentencing court to "vacate, set aside, or correct his sentence on the ground that the court had imposed the sentence in

-8-

violation of federal law . . . ." Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002). On appeal, "we review the district court's legal determinations de novo and the court's findings of fact for clear error." Parsley v. United States, 604 F.3d 667, 671 (1st Cir. 2010).

Moreno alleges that he received ineffective assistance of counsel. This claim requires a court to first assess whether "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland, 466 U.S. at 688). Second, we inquire "whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694). In the guilty plea context, this means Moreno has to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Colón-Torres, 382 F.3d 76, 86 (1st Cir. 2004) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

## A. Objectively Reasonable Performance by Counsel

The first inquiry is whether Anglada's performance fell below the objective standard of reasonableness that can be expected of proficient counsel. We have noted in the past that this assessment must be a "fairly tolerant" one because "the Constitution pledges to an accused an effective defense, not

necessarily a perfect defense or a successful defense." <u>Scarpa</u> v. <u>Dubois</u>, 38 F.3d 1, 8 (1st Cir. 1994).

We need not determine whether Anglada's conduct fell below this tolerant standard for performance. As we explain below, whether Anglada's conduct amounted to objectively unreasonable advocacy or not, Moreno has failed to satisfy <u>Strickland</u>'s prejudice requirement. <u>See</u> <u>Tevlin</u> v. <u>Spencer</u>, 621 F.3d 59, 66 (1st Cir. 2010) ("A defendant's failure to satisfy one prong of the <u>Strickland</u> analysis obviates the need for a court to consider the remaining prong."). However, to the extent we find it necessary to comment on Anglada's performance, we note that if he has not fallen through, he may nonetheless still be positioned on the thinnest of ice. In failing to account for the 2-level sentence enhancement that 21 U.S.C. § 860 prescribes, Anglada overlooked a weighty sentencing factor clearly applicable to his client on the express terms of the charging instrument. Though we need not determine whether such an oversight rises to the level of objectively deficient performance under <u>Strickland</u>, Anglada's advocacy for his client on this particular issue in sentencing certainly left much to be desired.

**B. Whether Moreno was Prejudiced by Anglada's Performance**

We conclude that Moreno has not demonstrated that he was prejudiced by Anglada's conduct. In considering the merits of Moreno's claim under the second prong of <u>Strickland</u>, we first note

that Anglada's failure to properly calculate Moreno's sentence exposure, by itself, does not amount to prejudice.[4]  See United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev. on other grounds, 520 U.S. 751 (1997) ("An attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test.").

Moreno contends that Anglada's conduct prejudiced him in two ways.  First, Moreno claims that Anglada's oversight regarding

_____

[4]  Moreno points us to United States v. Alvarez-Tautimez, a Ninth Circuit case where counsel's failure to move to withdraw the defendant's guilty plea was determined to meet Strickland's prejudice requisite.  160 F.3d 573 (9th Cir. 1998).  Moreno's reliance on Alvarez-Tautimez is misguided.  In that case, counsel learned that a co-defendant successfully moved to suppress certain key evidence before the district court accepted his client's guilty plea.  The Ninth Circuit concluded that counsel's failure to research and move to withdraw his client's plea constituted ineffective assistance, largely because of the likelihood that a motion to withdraw would have succeeded where the government's case against his client depended on the same evidence as his co-defendant's.  See id. at 577 (noting defendant "was prejudiced by the denial of an opportunity to file a motion to withdraw a plea which . . . would have been reasonably likely to succeed").  Here, Moreno cannot point to any similar likelihood of success.

Moreover, Alvarez-Tautimez is also distinguishable from the instant case because, at the time it was decided, applicable law in the Ninth Circuit provided the defendant an absolute right to withdraw a guilty plea prior to sentencing or before the district court "accepted" such a plea.  See id. ("[I]n mid-1994, at the time of [counsel's] decision not to file a motion to withdraw Alvarez's plea, there was clear precedent that a plea could be freely withdrawn at any time before it was accepted by the district court.").  The same is not true here.  See United States v. Negrón-Narváez, 403 F.3d 33, 36 (1st Cir. 2003) ("It is well established that a defendant does not have an absolute right to withdraw a guilty plea.").

-11-

the full extent of his sentence exposure denied him the opportunity of arguing at the district court that he sought to withdraw his guilty plea on the grounds that he was unaware of the consequences of pleading guilty. Second, because "a motion to withdraw a guilty plea brought before sentencing . . . is reviewed under a more liberal standard than a motion filed after sentencing," United States v. Laliberte, 25 F.3d 10, 13 (1st Cir. 1994), Moreno posits that Anglada's misadvise prejudiced him by making it more difficult to withdraw his guilty plea on direct appeal to this Court.

Moreno's arguments are unavailing because they fail to establish that but for Anglada's conduct, Moreno would have foregone a guilty plea and run the gauntlet of trial. See United States v. Isom, 85 F.3d 831, 837 (1st Cir. 1996) ("[A] defendant must show that . . . 'by [counsel's] inadequate performance, Appellant was induced to enter guilty pleas which he otherwise would not have entered.'" (quoting United States v. Austin, 948 F.2d 783, 786 (1st Cir. 1991))). Moreno's first attempt to withdraw his guilty plea before the PSR showing his correct sentence exposure was issued, upon which he perfunctorily relies as evidence of his alleged intent to go to trial, does not settle the matter in his favor. After the district court denied this motion, the record shows that Moreno was made aware of the fact that he actually faced a potentially harsher sentence and had repeated opportunity to again move to withdraw his guilty plea before the

district court held its sentencing hearing.[5]  Each time, Moreno opted not to do so and instead proceed to sentencing.  Most notably, at the sentencing hearing held on November 14, 2006, Moreno acknowledged that he understood the PSR and its contents (which included the 2-level enhancement the parties overlooked in their agreement) and affirmed that he wished the district court to impose a sentence.[6]

Moreno's unsupported assertions that he would have proceeded to trial if not for Anglada's allegedly inadequate assistance are similarly ineffectual, and we find that the district court did not err when it dismissed Moreno's § 2255 petition based on the parties' filings.  "A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations . . . consist of no more than conclusory prognostications and perfervid rhetoric . . . ."  LaBonte, 70 F.3d at 1412-13.  Moreno did not so

---

[5]  Anglada submitted an affidavit which declares, inter alia, that (1) once he became aware of the parties' oversight as to Moreno's sentence exposure, he informed his client of this fact but (2) did not discuss with him in "substantial length the fact that he could ask the Court to allow him to withdraw the plea before the sentence was imposed thus providing a lesser burden."  We note that Moreno overstates matters when he avers, based on this second statement, that Anglada wholly "failed to advise him of his right to withdraw the guilty plea . . . ."

[6]  Moreno did, however, state that he would like to "be given the 87 months" in the plea agreement, adding that he "was not told about any additional time."

-13-

much as file sworn statements or affidavits to support his contention that but for Anglada's conduct he would have sought trial, and has instead buttressed his case on groundless affirmations that evidence in the record bears out his claim of prejudice. We have rejected such bare averments in the past and do so again today, as such "self-serving statement[s] . . . unaccompanied by either a claim of innocence or the articulation of any plausible defense that [] could have [been] raised had [a defendant] opted for a trial, [are] insufficient to demonstrate the required prejudice" under Strickland.[7] Id. at 1413.

Working within the four corners of Moreno's brief to this Court, we also find statements that subvert Moreno's claim that he would have taken his chances at trial if he had been permitted to withdraw his guilty plea before sentencing. For example, noting that co-defendants who pled after him received less severe sentences, Moreno reasons that the record suggests that "had . . . trial counsel [] asked the Court to withdraw the plea a better plea could have been renegotiated." Further, claiming the government's

---

[7] To the extent Moreno does offer a glimpse into defenses he could or would have raised at trial, Moreno just states that the government's "evidence against him was weak and is weak." We simply note, as the district court did, that in considering Moreno's direct appeal we saw matters differently and underscored that "[e]very indication is that the evidence against [Moreno and his two co-defendants] was formidable, and that disclosure of their greater sentencing exposures would have dissuaded none of them from taking the plea deals offered by the government." Moreno-Espada, No. 06-2759, slip op. at 2 (1st Cir. Sept. 17, 2008) (unpublished opinion).

evidence against him was flimsy, Moreno posits that if he "had requested the withdrawal of the plea he could have [] received a more lenient sentence . . . ."  Finally, Moreno's brief to this Court attempts to clarify that references to the possibility of negotiating a more lenient sentence do "not mean that [Moreno] would have opted to go to trial, and that he will not do so, if given the chance.  [Moreno] was willing to go to trial, and will go to trial, unless a favorable agreement is reached."

These affirmations betray that what truly drives Moreno's appeal may be the fact that he received a more onerous sentence than the 87 months imprisonment he was perhaps led to anticipate. The sentence of 108 months imprisonment that the district court ultimately imposed, however, was always within the range of possible sentences Moreno could receive under his plea agreement and was significantly less severe than the 40-year statutory maximum to which Moreno thought he exposed himself by pleading guilty.  In any case, it is well settled that post-sentencing "buyer's remorse" is not a valid basis on which to dissolve a plea agreement and "the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea." Mercedes-Mercedes, 428 F.3d at 359 (quoting United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000)); see also Miranda-González v. United States, 181 F.3d 164, 165 (1st Cir. 1999) ("A guilty plea will not be set aside

where a defendant has had a change of heart simply because he now believes the case against him has become weaker or because he is not satisfied with the sentence he has received.").

## C.  On Government's Failure to Properly Calculate Moreno's Sentence Exposure

Having concluded that the district court correctly denied Moreno's § 2255 petition to vacate, set aside, or correct his sentence, we do not believe our work is done.  Examining the record, we are compelled to comment further on the patent missteps that blemished Moreno's plea proceedings.  While our decision today required us to appraise Anglada's performance, we cannot ignore that the government's attorneys similarly overlooked a sentence enhancement that was evident from the face of the indictment when they ratified Moreno's plea agreement.  We are equally cognizant that this is not the only recent example of a case prosecuted by the same office of the United States Attorney to arrive at this Court's doorstep in which the government has entered into a plea agreement that incorrectly disclosed or otherwise failed to impart a defendant's true sentencing exposure.  See, e.g., United States v. Ortiz-García, No. 10-2323, 2011 WL 6061352 (1st Cir. Dec. 7, 2011).

We take this opportunity to stress that such neglectful lapses are not just grist for the mill of appeal, they also chip away at the essential "presumption that prosecutors can be relied on to perform their official duties properly."  Ferrara v. United

States, 456 F.3d 278, 293 (1st Cir. 2006). Few contexts exist in which this presumption of prosecutorial good faith seems as necessary as when the government secures a defendant's guilty plea. Because a defendant who pleads guilty inescapably waives a number of fundamental constitutional rights, we have warned that "the government is required to meet 'the most meticulous standards of both promise and performance'" when it enters a plea agreement, United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004) (quoting United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002)), and have articulated a government-held "duty to bring all facts relevant to sentencing to the judge's attention," id. We trust that prosecutors in this Circuit will be mindful of these responsibilities when discharging their duties and take no pleasure in calling them to their attention when they fail to do so.

### III. Conclusion

For the foregoing reasons, we affirm the district court's order denying Moreno's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**Affirmed**.